**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| COLONY INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:10CV581 |
| | ) |
| CHARLES A. PETERSON; EVERGREEN | ) |
| COMPOSITE TECHNOLOGY, LLC; and | ) |
| RANDOLPH BANK AND TRUST COMPANY, | ) |
| | ) |
| Defendants and | ) |
| Third-party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| EDWARD L. CLAYTON, JR. and | ) |
| HPB INSURANCE GROUP, INC., | ) |
| | ) |
| Third-party Defendants. | ) |

## MEMORANDUM OPINION, RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

The instant case comes before the undersigned United States Magistrate Judge for a recommended ruling on the following seven Motions:

1) Motions [sic] of Third-Party Defendants Edward L. Clayton, Jr. and HPB Insurance Group, Inc. for Judgment on the Pleadings and to Dismiss for Failure to State a Claim upon Which Relief can be Granted (Docket Entry 36);

2) Motion of Third-Party Defendants to Dismiss Third-Party Claim for Breach of Fiduciary Duty for Failure to State a Claim upon which Relief can be Granted (Docket Entry 74);

3) Motion for Summary Judgment of Third-Party Defendants as to All Claims of the Third-Party Plaintiffs Against Them (Docket Entry 82);

4) Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion for Summary Judgment (Docket Entry 91);

5) Randolph Bank's Motion for Partial Summary Judgment on Third and Fourth Counter-Crossclaims Against Evergreen Composite Technology, LLC (Docket Entry 93);

6) Colony Insurance Company's Motion for Summary Judgment or Alternatively for Partial Summary Judgment (Docket Entry 76); and

7) Randolph Bank's Motion for Partial Summary Judgment as Against Plaintiff (Docket Entry 95).[1]

For the reasons that follow, the undersigned will recommend that:

1) Motion of Third-Party Defendants to Dismiss Third-Party Claim for Breach of Fiduciary Duty for Failure to State

---

[1] In addition, the undersigned will address the following motions: Plaintiff Colony Insurance Company's Requests to File Original Discovery (Docket Entries 86, 118); Consent Motion for Extension of Time for Third-Party Defendants to File their Reply Brief to Defendant Evergreen Composite Technology, LLC's Brief in Response to Third-Party Defendants' Motion to Dismiss and Motion for Summary Judgment (Docket Entry 114); Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion to Strike Affidavit of Michael W. Gay (Docket Entry 109); Third-Party Defendants' Motion to Exclude Expert Report of R. Bryan Tilden (Docket Entry 124); and Motion to Seal Documents and for Maintenance of Documents Under Seal (Docket Entry 130).

a Claim upon which Relief can be Granted (Docket Entry 74) be converted into a motion for summary judgment and decided in conjunction with the Motion for Summary Judgment of Third-Party Defendants as to All Claims of the Third-Party Plaintiffs Against Them (Docket Entry 82);

2) Motions [sic] of Third-Party Defendants Edward L. Clayton, Jr. and HPB Insurance Group, Inc. for Judgment on the Pleadings and to Dismiss for Failure to State a Claim upon Which Relief can be Granted (Docket Entry 36), Motion for Summary Judgment of Third-Party Defendants as to All Claims of the Third-Party Plaintiffs Against Them (Docket Entry 82), and Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion for Summary Judgment (Docket Entry 91) be denied;

3) Randolph Bank's Motion for Partial Summary Judgment on Third and Fourth Counter-Crossclaims Against Evergreen Composite Technology, LLC (Docket Entry 93) be granted; and

4) Colony Insurance Company's Motion for Summary Judgment or Alternatively for Partial Summary Judgment (Docket Entry 76) and Randolph Bank's Motion for Partial Summary Judgment as Against Plaintiff (Docket Entry 95) be granted in part and denied in part.

## I. Background

The instant matter arises from a dispute regarding Plaintiff Colony Insurance Company's ("Colony's") indemnity obligations under an insurance policy (the "Policy") covering a commercial building located at 501 Hamilton Road, Montezuma, Macon County, Georgia, that was destroyed by fire on May 18, 2010. The evidence before the Court reveals the following:

### A. Pre-Fire

Evergreen Composite Technology, LLC ("Evergreen"), owned in part by Charles A. Peterson ("Peterson"), operated as a manufacturer of custom composite wood products such as decking, railing and fencing materials. (See Docket Entry 92-1 at 2-3.)[2] In July 2007, Evergreen purchased, with financing from Randolph Bank and Trust Company ("Randolph Bank"), two properties located adjacent to one another in Montezuma, Macon County, Georgia: (1) 261 Hamilton Road, used primarily for offices and warehouse operations; and (2) 501 Hamilton Road, used primarily for manufacturing operations. (Docket Entry 10, ¶¶ 8, 9; see also Docket Entry 92 at 2-3.)

In order to obtain said financing, "Evergreen executed a security agreement in favor of Randolph Bank covering collateral, including, without limitation, the machinery, equipment, inventory business property and assets located at these properties." (Docket

---

[2] To avoid confusion that might arise due to variations in the pagination conventions used in the Parties' filings with the Court, this Memorandum Opinion cites said filings by reference to the page numbers in their CM/ECF footers.

Entry 94 at 3; see also Docket Entry 94-2 at 34-44.) "As additional security for its indebtedness under the First Note and Second Note, Evergreen granted Randolph Bank a Deed to Secure Debt With Security Agreement and Assignment of Rents and Leases for, among other things, the property at 261 Hamilton Road and 501 Hamilton Road." (Docket Entry 94 at 3; see also Docket Entry 94-3 at 2-37.) Randolph Bank perfected its interest in the security agreement and Deed to Secure Debt by recording the Deed to Secure Debt and Uniform Commercial Code ("UCC") financing statements in the public record of Macon County, Georgia. (See Docket Entry 94 at 3-4.)

In 2009, due to the loss of a major customer and the general economic downturn, Evergreen idled its manufacturing operations and terminated its workforce, leaving the two properties vacant. (See Docket Entry 92 at 3.) In February 2010, a fire destroyed the office building located at 261 Hamilton Road under suspicious circumstances. (Docket Entry 90 at 51.) The manufacturing building at 501 Hamilton Road, the property at issue in this action, was not damaged by the February 2010 fire. (Id.)

B. Insurance Application

The fire at 261 Hamilton Road prompted both Randolph Bank and Evergreen to take additional steps to protect their respective interests in the remaining structure at 501 Hamilton Road. Evergreen, for its part, retained Fire Protection Services, Inc. ("FPS") to inspect the property at 501 Hamilton Road and to take steps necessary to protect that property from a similar fate. (See

Docket Entry 92 at 3; Docket Entry 90-2 at 37-44.) FPS's inspection established that the sprinkler system in operation at 501 Hamilton Road met National Fire Protection Association Standards. (Docket Entry 90-2 at 39.) FPS also ensured that the main exterior valves controlling the systems were in the "on" position and installed a chain and lock on the valves to further secure them and prevent inadvertent closure. (Id. at 38.) Moreover, the exterior doors of the 501 Hamilton Road property were separately secured by a locksmith. (Docket Entry 92-3 at 1-2; Docket Entry 90 at 59.)

With respect to Randolph Bank, the fire at the 261 Hamilton Road property made Randolph Bank aware that neither property was covered by insurance. (See Docket Entry 92-5 at 2.) Accordingly, to protect itself from further losses, Randolph Bank sought to purchase a force-placed insurance policy covering the 501 Hamilton Road property. (Id.) Randolph Bank enlisted HPB Insurance Group ("HPB") to assist with this effort (see id. at 2-5), and Edward Clayton of HPB prepared a Commercial Insurance Application (the "Application") and a Special Property Vacancy Supplement (the "Supplement") on behalf of Randolph Bank and Evergreen (see Docket Entry 92-6 at 3). Clayton submitted the Application and the Supplement to Burns & Wilcox, a wholesale insurance brokerage firm that brokers "surplus lines policies" on behalf of multiple insurance companies, including Colony. (See id. at 7.)[3] Burns &

_____

[3] "Surplus lines are substandard risks that standard markets
(continued...)

Wilcox representative Allison Horsey in turn forwarded the Application and the Supplement to Colony. (See Docket Entry 92-8 at 8.) Specifically, Ms. Horsey submitted the Application and the Supplement to Colony underwriter Rosanne Gauthier on March 2, 2010, and they were then entered into Colony's system on March 4, 2010. (Id. at 9; Docket Entry 88 at 13.)[4]

According to Evergreen, the Supplement was inaccurate in that: (1) it stated that Evergreen had plans to "resume manufacturing Kwikdek" when Evergreen had never manufactured Kwikdek; (2) it indicated that 501 Hamilton Road was equipped with a "central station fire alarm," but said property was never equipped with an alarm that automatically notified the fire department in the event of a fire; and (3) it indicated that power and heat would remain "on" during the vacancy, but power and heat were "off" and had been "off" for some time. (See Docket Entry 92 at 4.) Evergreen and Peterson assert that "Peterson did not complete the Special Property Vacancy Supplement and never saw it prior to the filing of the Complaint in this case." (Id.; see also Docket Entry 90 at 112.)

---

[3](...continued)
generally do not handle." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 491 (4th Cir. 1998).

[4] The spelling of Ms. Gauthier's first name appears in different ways throughout the record. (Compare, e.g., Docket Entry 88 at 1, with, e.g., Docket Entry 92 at 4.) The undersigned has adopted the spelling appearing in Ms. Gauthier's deposition. (See Docket Entry 88 at 1.)

C.  <u>The Insurance Policy and Colony's Inspection</u>

Colony bound coverage on the 501 Hamilton Road property and its contents on March 16, 2010. (<u>See</u> Docket Entry 1-1 at 2.) The Policy named Evergreen as the Insured and Randolph Bank as a Mortgagee and Loss Payee. (<u>See</u> <u>id.</u> at 2, 25; Docket Entry 1-3 at 11-12.) The Policy, which was effective from March 16, 2010, to March 16, 2011, contained limits of $1,000,000.00 ("$1M") for the building (the "Building Limit") and $3,500,000.00 ("3.5M") for business personal property (the "Personal Property Limit"). (<u>See</u> Docket Entry 1-1 at 12.) Morever, the Policy included a Fire Protective Safeguards Endorsement which required an automatic sprinkler system, fire extinguishers, and functioning utilities. (<u>See</u> Docket Entry 1-2 at 15-16.) The Policy also included an Inspection Endorsement which imposed a $250.00 non-refundable fee to cover a physical inspection of the property. (<u>See</u> Docket Entry 1-1 at 2.) Shortly after issuance of the Policy, Randolph Bank paid the entire premium, including the $250.00 inspection fee. (<u>See</u> Docket Entry 92-5 at 9.)

In connection with the $250.00 inspection fee, Colony's vendor, Safety Resources, inspected the 501 Hamilton Road property in mid-April 2010. (<u>See</u> Docket Entry 88-1 at 1-8.) Contrary to the Supplement, the inspection report of April 21, 2010, noted that the utilities and the sprinkler system at 501 Hamilton Road were "off"

and that the property lacked a fire alarm or fire alarm monitoring. (<u>Id.</u> at 7.)[5]

D.  <u>Fire at 501 Hamilton Road and Initiation of this Action</u>

On May 18, 2010, with Colony having taken no action to cancel or rescind the Policy in light of the inspection report by Safety Resources, a fire partially destroyed the building at 501 Hamilton Road and its contents.  (<u>See</u> Docket Entry 92-4, ¶ 3.)  Firefighters responding to the fire discovered that the main exterior valves controlling the sprinkler systems had been turned "off."  (<u>Id.</u> ¶ 7.)  Firefighters also "noticed cut chain links on the ground of the pit [where the valves controlling the on scene fire hydrants and sprinkler system were located], as if a bolt cutter had cut the chain links."  (<u>Id.</u> ¶ 8.)  According to the firefighter who first examined the valves, "[i]t appeared from the cut chain links that the valves had been tampered with and vandalized."  (<u>Id.</u>)  When the valves were opened, the sprinkler systems began flowing water immediately.  (<u>Id.</u>)

Randolph Bank and Evergreen/Peterson made claims on Colony under the Policy.  Colony filed the instant action against Peterson, Evergreen and Randolph Bank seeking a judicial declaration either that Colony has the authority to rescind the Policy due to misrepresentations contained in the Application and/or Supplement (<u>see</u> Docket Entry 1, ¶¶ 29-35) or that its

---

[5] With respect to the finding that the sprinkler system was "off," Evergreen contends that the inspection report was inaccurate at the time of the inspection.  (<u>See</u> Docket Entry 92 at 6 n.5.)

-9-

obligations are limited in certain respects by the terms of the Policy (see id. ¶¶ 36-38).

Randolph Bank thereafter answered Plaintiff's Complaint and filed a counterclaim against Colony for "Breach of Contract." (See Docket Entry 10, ¶¶ 51-59.) Evergreen and Peterson also answered Plaintiff's Complaint and asserted a counterclaim against Colony for breach of contract (see Docket Entry 12 at 18-19), but in addition asserted cross-claims against Randolph Bank for breach of fiduciary duty and negligence in procuring the Policy (in the event the Application and/or the Supplement are deemed to contain material misrepresentations) (id. at 19-22). In addition, Peterson and Evergreen separately filed a Third-Party Complaint asserting claims against both Clayton and HPB for negligence and breach of fiduciary duty (in the event the Application and/or the Supplement are deemed to contain material misrepresentations). (Docket Entry 14.)

Randolph Bank answered Evergreen and Peterson's cross-claims (Docket Entry 26, ¶¶ 1-11) and lodged counter-cross-claims against Evergreen and Peterson for "Breach of Contract" (id. ¶¶ 47-50); "Negligence" (id. ¶¶ 51-54); "Breach of Contract – First Promissory Note" (id. ¶¶ 55-59); and "Breach of Contract – Second Promissory Note" (id. ¶¶ 60-64). The Parties have now filed a number of motions addressing not only the substantive merit of the claims, but also certain evidentiary and administrative issues requiring the Court's attention.

## II. Evidentiary/Administrative Motions

Before addressing the Motions relevant to the substantive merit of the Parties' claims, the undersigned will examine the following Motions that concern administrative or evidentiary matters: Colony's Requests to File Original Discovery (Docket Entries 86, 118); Consent Motion for Extension of Time for Third-Party Defendants to File their Reply Brief to Defendant Evergreen Composite Technology, LLC's Brief in Response to Third-Party Defendants' Motion to Dismiss and Motion for Summary Judgment (Docket Entry 114); Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion to Strike Affidavit of Michael W. Gay (Docket Entry 109); Third-Party Defendants' Motion to Exclude Expert Report of R. Bryan Tilden (Docket Entry 124); and Colony's Motion to Seal Documents and for Maintenance of Documents under Seal (Docket Entry 130).

### A. Colony's Requests to File Original Discovery (Docket Entries 86, 118)

Colony has filed two separate Requests to File Original Discovery with the Court. (Docket Entries 86, 118.) The first Request seeks permission to file Peterson and Evergreen's Responses to Colony's Second Set of Interrogatories (in connection with Colony's Motion for Summary Judgment or Alternatively for Partial Summary Judgment (Docket Entry 76)). (See Docket Entry 86 at 1.) The second Request asks for leave to file the following four documents, all in connection with Colony's Reply to Randolph Bank's

Memorandum of Law in Opposition to Colony's Motion for Summary Judgment (Docket Entry 117):

1) Randolph Bank's Rule 26(a)(1) Initial Disclosures, dated March 11, 2011;

2) Randolph Bank's Second Set of Interrogatories and Second Request for Production of Documents and Things Addressed to Colony, dated July 8, 2011;

3) Randolph Bank's Responses to Colony's First Interrogatories, dated May 9, 2011; and

4) Randolph Bank's Responses to Colony's Second Interrogatories, dated July 29, 2011.

(See Docket Entry 118 at 1-2.)

Neither Request is opposed. (See Docket Entries dated Feb. 6, 2012, to present.) Under the Local Rules of this Court, an uncontested motion will ordinarily be granted without further notice. See M.D.N.C. LR7.3(k). The record reflects no reason to depart from that standard in the instant case. Accordingly, Colony's Requests to File Original Discovery (Docket Entries 86, 118) will be granted.

B. <u>Clayton and HPB's Consent Motion for Extension of Time to File their Reply Brief regarding their Motion to Dismiss and Motion for Summary Judgment (Docket Entry 114)</u>

Clayton and HPB have moved the Court for an extension of time within which to serve their Reply Brief regarding their Motion to Dismiss and Motion for Summary Judgment. (Docket Entry 114.) For the cause shown in that Motion, the Court will grant the requested extension.

C.  Evergreen and Peterson's Motion to Strike Affidavit of Michael W. Gay (Docket Entry 109)

In support of their Motion for Summary Judgment (Docket Entry 82), Clayton and HPB filed the affidavit of expert Michael Gay. (See Docket Entry 83-4.)  Clayton and HPB timely identified Gay as an expert and served a copy of a report prepared by Gay pursuant to the deadlines set forth in the Scheduling Order, as amended (see Docket Entries 31, 32, 50, 51).  However, Peterson and Evergreen note that HPB and Clayton took no action to supplement that report within the deadline for doing so or within the general discovery period.  (See Docket Entry 110 at 2.)

Evergreen and Peterson have now filed the instant Motion to Strike Gay's affidavit on the grounds that Gay "sets forth new opinions not covered by his expert report, not disclosed by the deadline to supplement under Rule 26(e), and not disclosed before the discovery period expired." (Id.)  In Response, Clayton and HPB note initially that Evergreen and Peterson "were allowed to depose [Gay] . . . any time prior to December 7, 2011," but elected not to do so.  (Docket Entry 123 at 1.)  They further argue that, despite Evergreen and Peterson's contentions, "[i]n fact, each and every opinion contained within Mr. Gay's affidavit, with the exception of one statement applying North Carolina law contained in paragraph 18, was disclosed in Mr. Gay's expert report." (Id. at 2.)  With respect to the lone statement in paragraph 18 which Clayton and HPB acknowledge reflects a new opinion, Clayton and HPB contend:

> Given that the basis for the single additional opinion
> contained in paragraph 18 is the testimony of the third-

party plaintiff himself, Mr. Peterson, as well as the law of North Carolina related to the duty of an insured of which [Evergreen/Peterson's] counsel surely has long been aware, and given the provision of the opinion five months prior to trial, [Clayton and HPB] request that the motion to strike the opinion contained in paragraph 18 be denied.

(<u>Id.</u> at 12-13.)

In Reply, Evergreen and Peterson maintain that "[a] careful comparison of the report and affidavit, however, indicates that Mr. Gay has in fact extended his opinions in the affidavit into new areas not covered by the report." (Docket Entry 129 at 1-2.) Per Evergreen and Peterson's Reply, Gay's affidavit extends the opinions contained in his prior expert report into new areas as follows:

- Paragraphs 10 and 12 of Gay's affidavit state that HPB did not owe a duty to submit the Fire Protection Services Report <u>to anyone</u>, whereas the expert report indicated only that HPB did not owe a duty <u>to Colony</u>, without discussing a duty that Clayton and HPB may have owed to Peterson, Evergreen or Randolph Bank. (<u>Compare</u> Docket Entry 83-4 at 3 (¶ 10), 4 (¶ 12), <u>with</u> <u>id.</u> at 26 (¶ 16), 34 (¶¶ 53, 54).)

- The second prong of paragraph 13 of Gay's affidavit, stating that "it is not a usual customary or reasonable practice for an insurance agent to peruse or review inspection reports and/or other documentation or information to corroborate, undermine or call into question the truthfulness of an insured's statements secured in connection with insurance policy applications and application documents" (<u>id.</u> at 5

(¶ 13)), is not included in Gay's expert report. (<u>Compare</u>
<u>id.</u>, <u>with</u> <u>id.</u> at 35 (¶ 55).)

- Paragraph 14 of Gay's affidavit states that there is no
  "professional standard, law and/or case law requirement known
  to [Gay]" regarding when or to whom agents are to deliver a
  copy of a policy, whereas the expert report reflects only
  "professional standards" or practices in the "insurance
  industry" without reference to "law" or "case law." (<u>Compare</u>
  <u>id.</u> at 6 (¶ 16), <u>with</u> <u>id.</u> at 31 (¶ 36), 35-36 (¶¶ 57, 58, 59,
  60).)

- Paragraph 16 of Gay's affidavit offers conclusions that (i)
  "neither of the third party defendants violated any legal duty
  owed to the third party plaintiffs or to any party in this
  civil action" (<u>id.</u> at 5-6 (¶ 16)); (2) "neither of the third-
  party defendants were negligent in any manner in connection
  with the third-party plaintiffs or in connection with any
  party in this civil action" (<u>id.</u>); and (3) "there was no
  fiduciary duty that was breached by either of the third-party
  defendants in connection with the third-party plaintiffs, or
  in connection with any party in this civil action" (<u>id.</u>),
  whereas the expert report does not offer ultimate conclusions
  on these issues, addresses only "professional standards" (as
  opposed to legal duties), and fails to reference a fiduciary
  duty owed to Evergreen and/or Peterson. (<u>Compare</u> <u>id.</u>, <u>with</u>
  <u>id.</u> at 33-36 (¶¶ 46, 51, 52, 57, 58).)

- As acknowledged by Clayton and HPB, Paragraph 18 of the affidavit contains the new opinion that "third-party plaintiffs, through third-party plaintiff Peterson, . . . failed to comply with reasonable and prudent duties of insured/applicants to review insurance policy application documents . . . ." (Compare id. at 7 (¶ 18), with id. at 22-37.)

Under the Federal Rules of Civil Procedure, a party must disclose to the other parties the identity of an expert witness "at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(A), (D). If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has held:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

In addressing said issue, however, the undersigned finds that consideration of the challenged information offered by Gay would not affect the resolution of issues at the summary judgment stage.

At the summary judgment stage, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and "may not make credibility determinations or weigh the evidence," <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). At best, Gay's affidavit lends support to Clayton and HPB's position that Clayton did not breach a fiduciary duty owed to Evergreen and/or Peterson, or was not negligent, in procuring the Policy. However, in light of competing evidence presented by Evergreen and Peterson, <u>see</u> discussion <u>infra</u> pp. 59-62, Gay's evidence would not compel entry of summary judgment in favor of Clayton and HPB.[6]

Under these circumstances, a decision as to the propriety of the challenged opinions expressed in Gay's affidavit constitutes a matter best left for resolution by the district judge who tries this case. The undersigned will deny Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion to Strike Affidavit of Michael W. Gay (Docket Entry 109) as moot and/or unripe.

> D. <u>Clayton and HPB's Motion to Exclude Expert Report of R. Bryan Tilden (Docket Entry 124)</u>

In connection with Peterson and Evergreen's Brief opposing Clayton and HPB's Motion to Dismiss and Motion for Summary

---

[6] Moreover, to the extent Gay offers opinions regarding the state of the law or the existence of case law on a certain matter, the Court will make a legal, not a factual determination.

Judgment, Peterson and Evergreen attached the report of expert R. Bryan Tilden (see Docket Entry 112-9 at 6-26). Clayton and HPB now move to strike that report on the grounds that Peterson and Evergreen "did not submit a sworn affidavit from Mr. Tilden attesting to the veracity of his opinions and Mr. Tilden's report is not sworn to or verified." (Docket Entry 124 at 1.) Accordingly, HPB and Clayton conclude that Tilden's report "is not admissible evidence for purposes of Rule 56 and should be disregarded by the Court . . . ." (Id. at 1-2.)

Evergreen and Peterson have filed a Response to the Motion to Strike through which they seek to "voluntarily withdraw the expert report of R. Bryan Tilden from the record before the Court for purposes of summary judgment." (Docket Entry 134 at 1.) In light of this filing, the undersigned will grant HPB and Clayton's Motion to Strike as uncontested and will not consider the information provided by Tilden in making recommendations regarding summary judgment matters.

E.    Motion to Seal Documents and for Maintenance of Documents Under Seal (Docket Entry 130)

Colony has filed a Motion to Seal Documents and for Maintenance of Documents under Seal (Docket Entry 130) seeking "to seal certain exhibits to the depositions of David Andrew Gleason, Charles Peterson, and Shelly Barr, previously filed herein by [Colony] in support of its Motion for Summary Judgment, or Alternatively for Partial Summary Judgment, and Defendant Randolph Bank and Trust's Opposition to the Same, and to maintain said

documents under seal" (id. at 1-2).  Specifically, the instant
Motion to Seal concerns the following six documents:

- Exhibit 19 to the Deposition of David Andrew Gleason;

- Exhibits 23, 25, 43, and 44 to the Deposition of Charles A.
  Peterson; and

- Exhibit 27 to the Deposition of Shelly Barr.

(See Docket Entry 131 at 2-3.)

Colony and Randolph Bank previously filed two separate Motions
to Seal which also addressed the foregoing documents.  (See Docket
Entries 102, 105.)  At that time, the Court, after laying out the
applicable standard for sealing (see Docket Entry 113 at 4-8),
denied said Motions for failure to address the Fourth Circuit's
applicable sealing regimen, but without prejudice to the filing of
renewed motions addressing the deficiencies highlighted in that
Order (see id. at 8-9).  Colony and Randolph Bank, in compliance
with that Order, have now filed the instant Motion fully addressing
the applicable standard for sealing documents filed in connection
with a dispositive motion.

In addressing each of the documents it seeks to file under
seal, Colony states that Exhibit 19 to the Deposition of David
Gleason and Exhibit 27 to the Deposition of Shelly Barr both
"contain proprietary information directly related to the business
practices of Colony" (Docket Entry 131 at 6), and accordingly, that
Colony's private business interests overcome the First Amendment
right of access.  (See id. at 5-6.)  Colony also offers that the
remaining four documents "contain [Peterson's] personal and/or

financial information, not generally available to the public."
(<u>Id.</u> at 7.)  Moreover, Colony seeks to file redacted versions of
certain documents, rather than attempting to have entire documents
filed under seal, where said measures would adequately address the
stated proprietary and privacy interests.  (<u>See</u> Docket Entries 131-
1 – 131-4.)

In light of this showing, and the Court's independent review
of the documents in question against the standard laid out in the
prior Order (<u>see</u> Docket Entry 113 at 4-8), the Court finds Colony's
instant Motion to Seal appropriate.  The documents in question
contain either proprietary business information which a competitor
of Colony could use to gain an unfair business advantage or private
personal and/or financial information.  The interest in avoiding
disclosure of such matters suffices to overcome the First Amendment
right of access in this case.  Accordingly, the Court will grant
Colony's Motion to Seal Documents and for Maintenance of Documents
under Seal (Docket Entry 130).

### III. Summary Judgment Motions of Colony, Randolph Bank, and Evergreen/Peterson

The undersigned turns to the motions for summary judgment as
between Colony, Randolph Bank, and Evergreen/Peterson: (1) Colony's
Motion for Summary Judgment or Alternatively for Partial Summary
Judgment (Docket Entry 76); (2) Evergreen and Peterson's Motion for
Summary Judgment (Docket Entry 91); (3) Randolph Bank's Motion for
Partial Summary Judgment as to Colony (Docket Entry 95); and
(4) Randolph Bank's Motion for Partial Summary Judgment on Third

and Fourth Counter-Crossclaims against Evergreen (Docket Entry 93). The first three of the above referenced motions address overlapping issues and will be analyzed together.

In considering these Motions, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus.</u>, 475 U.S. at 587.

The moving party may discharge its burden by identifying an absence of evidence to support the non-moving party's case. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The non-moving party must then "set forth specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original). The non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252 (citation omitted); <u>see also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to

defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

To the extent the Court must draw conclusions about matters of North Carolina law in evaluating the instant Motions, "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940).[7] However, "[a] state is not without law save as

_____

[7] Although the Policy at issue relates to property located in Georgia (see Docket Entry 1-1 at 12) and the Policy states "[t]his Contract is registered and delivered as a surplus line coverage under the Surplus Lines Insurance Law, O.C.G.A. Chapter 33-5" (Docket Entry 10-3 at 2), all Parties have affirmatively cited North Carolina law as governing interpretation of the Policy. Moreover, the Policy's reference to Georgia law is not an explicit choice of law provision. Further, under North Carolina law, "'[w]ith insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, *usually delivery of the policy*, controls the interpretation of the contract.'" SPX Corp. v. Liberty Mut. Ins. Co., ___ N.C. App. ___, ___, 709 S.E.2d 441, 448 (2011) (quoting Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000)). In this case, Ms. Gauthier's deposition testimony indicates the Policy was delivered electronically to Burns & Wilcox (see Docket Entry 88 at 24), whose address is listed as Charlotte, North Carolina, in the Policy (see Docket Entry 1-1 at 2). The address given for Peterson and Evergreen in the Policy is Asheboro, North Carolina (see id.), the Complaint lists Evergreen as having a principal place of business in Asheboro, North Carolina (see Docket Entry 1, ¶ 5), the Complaint identifies Peterson as a North Carolina resident (see id. ¶ 4), the Complaint names Randolph Bank as a North Carolina corporation with its principal place of business in Asheboro, North Carolina (see id. ¶ 6), and Evergreen and Peterson's Third-Party Complaint against Clayton and HPB describes HPB as a North Carolina corporation with its principal place of business in High Point, North Carolina (see Docket Entry 14, ¶ 5). For these reasons, for
(continued...)

its highest court has declared it.  There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them."  Id.

Accordingly, "it is the duty of [a federal court facing a question of state law] to ascertain from all the available data what the state law is and apply it . . . ."  Id. at 237.  "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  Id.

A.  Cross-motions between Colony, Evergreen/Peterson and Randolph Bank (Docket Entries 76, 91, 95)

Colony's Motion for Summary Judgment or Alternatively for Partial Summary Judgment (Docket Entry 76), Evergreen and Peterson's Motion for Summary Judgment (Docket Entry 91), and Randolph Bank's Motion for Partial Summary Judgment against Colony (Docket Entry 95) share common issues.

Colony's Motion for Summary Judgment asks the Court to find in Colony's favor as a matter of law based on the following contentions: (1) material misrepresentations in the Application and/or the Supplement render the Policy subject to rescission (see Docket Entry 76-1 at 22-25); (2) violation of the Policy's Fire

---

[7](...continued)
purposes of summary judgment, the undersigned accepts the premise that North Carolina law governs interpretation of the Policy.

-23-

Protective Safeguards Endorsement bars coverage under the Policy (see id. at 25-27); (3) as a Mortgagee, Randolph Bank may recover only up to the $1M Building Limit (see id. at 27-29); (4) because the machinery and equipment was permanently installed, Peterson, Evergreen, and Randolph Bank may recover only up to the $1M Building Limit (see id. at 29-34); and (5) neither waiver nor estoppel preclude Colony from contesting coverage under the Policy (see id. at 34-39).

Evergreen and Peterson move for entry of judgment as a matter of law that: (1) Colony has waived and/or is estopped from asserting any right to rescind or avoid insurance coverage (Docket Entry 92 at 7-15); and (2) Evergreen's machinery and equipment falls under the $3.5M Personal Property Limit rather than the $1M Building Limit (id. at 15-19).

Finally, Randolph Bank seeks judgment as a matter of law on contentions that: (1) its status as a Mortgagee entitles it to building coverage under the Policy (Docket Entry 97 at 7-8); (2) waiver and/or estoppel bar Colony from rescinding and denying coverage under the Policy as to Randolph Bank as a Mortgagee and Loss Payee (id. at 8-16); and (3) Evergreen's machinery and equipment was not permanently installed within the meaning of the Policy and thus falls under the $3.5M Personal Property Limit rather than the $1M Building Limit (id. at 16-19).

Accordingly, in order to resolve the three foregoing Motions, the Court must assess, as a matter of law, whether: (1) Colony is (or is not) barred by waiver and/or estoppel from rescinding the

Policy; (2) Colony may rescind the Policy due to alleged material misrepresentations in the Application and/or the Supplement; (3) violations of the Fire Protective Safeguards Endorsement bar recovery under the Policy; (4) any permanent installation of machinery limits any recovery under the Policy to the $1M Building Limit; (5) Randolph Bank's recovery as a Mortgagee is limited to the $1M Building Limit; and (6) Randolph Bank is entitled to recovery on the $1M Building Limit as a Mortgagee regardless of any alleged misrepresentations. The undersigned addresses each of these issues in turn.

       i.   <u>Waiver/Estoppel</u>

Colony, Randolph Bank, and Evergreen/Peterson all seek summary judgment in their favor on the issue of waiver/estoppel. Under North Carolina law, "[w]aiver is an intentional relinquishment or abandonment of a known right or privilege." <u>Hibshman v. Hibshman</u>, ___ N.C. App. ___, ___, 710 S.E.2d 438, 465 (2011) (internal quotation marks and citation omitted). Estoppel applies when a party,

> by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

<u>Webber v. Webber</u>, 32 N.C. App. 572, 576, 232 S.E.2d 865, 867 (1977).

Colony contends that, based on <u>United Capitol Ins. Co. v.</u>
<u>Kapiloff</u>, 155 F.3d 488, 491 (4th Cir. 1998), the "argument that
Colony has waived or is otherwise estopped from asserting its
coverage defenses fails as a matter of law." (Docket Entry 76-1 at
5-6.) In <u>Kapiloff</u>, an insurer issued a surplus lines policy
covering six commercial properties owned by the Kapiloffs in
Baltimore City, Maryland. <u>Kapiloff</u>, 155 F.3d at 490. Vandals
broke into part of the insured property and caused significant
damage, for which the Kapiloffs submitted a claim. <u>Id.</u> at 491.
Two weeks after that incident, a claims adjustor inspected the
insured property and found that it failed to meet the conditions of
the insurance policy. <u>Id.</u> This information, however, was not
shared with the Kapiloffs. <u>Id.</u> Subsequently, in separate
incidents, a fire broke out at one of the buildings and vandals
struck another of the buildings, which events prompted the
Kapiloffs to submit two additional claims. <u>Id.</u>

United Capitol denied all three of the Kapiloffs' claims
"stat[ing] that 'based on misrepresentations, omissions, and
concealments' by the Kapiloffs and their representatives in the
application process, it would regard the policy as rescinded *ab*
*initio* and would return the premium paid. Alternatively, it noted
that the Kapiloffs violated the policy conditions that the
properties have protective safeguards and not be vacant." <u>Id.</u> at
491-92. In United Capitol's action for declaratory judgment, the
Kapiloffs asserted that United Capitol had waived, or was otherwise

estopped from relying on, certain conditions of coverage in the policy because it failed to warn the Kapiloffs of the findings of the inspection which affected coverage. Id. at 497.

In ruling for United Capitol as a matter of law, the Fourth Circuit held first that to apply waiver and estoppel would extend coverage beyond that provided for in the policy in contravention of Maryland law by allowing coverage otherwise unavailable because of the failure to satisfy conditions of the Policy. Id. Second, the Fourth Circuit found that to require insurers to notify insureds whenever the insurer suspects that the property might not be insured would in effect create a new obligation under Maryland law. Id. And finally, the Fourth Circuit noted:

> [T]he amount of time it took for United Capitol to determine that the Kapiloffs' properties were not in compliance with the policy would not, as a matter of law, be long enough in any event to constitute a waiver of any right under the policy. As the district court appropriately pointed out in its opinion, an insurance company that denies coverage or rescinds the policy in bad faith risks liability for that action. See, e.g., Monumental Life Ins. Co. v. United States Fidelity and Guar. Co., 94 Md. App. 505, 617 A.2d 1163, 1181 (1993). In making coverage decisions, an insurance company must be entitled to a sufficient time to collect the facts, evaluate them, and make legal determinations with respect to those facts. These activities require not only field work but also an internal evaluation with a review by appropriate personnel. The one or two months urged by the Kapiloffs as supporting the finding of waiver or estoppel would hardly provide an insurance company with adequate time to make this kind of a decision, particularly when its liability for a wrongful decision could expose it to the risk of bad faith.

Id.

In arguing against Colony's position, Randolph Bank contends that, unlike in Kapiloff, Colony required a fee for the inspection,

thereby creating an affirmative duty to investigate and to verify the accuracy of the Application and the Supplement. (<u>See</u> Docket Entry 104 at 6.) Randolph Bank also cites to the deposition testimony of Ms. Gauthier, who testified that, had she reviewed the inspection report prior to the fire, she would have "immediately" taken action to have the Policy cancelled, thereby contradicting any assertion by Colony that it needed more time to make a decision about coverage, a key point in the <u>Kapiloff</u> reasoning. (<u>See</u> <u>id.</u> at 9-13.) Moreover, in its Motion for Summary Judgment, Randolph Bank notes that <u>Kapiloff</u> was decided pursuant to Maryland law, which, unlike North Carolina law, does not construe ambiguities in insurance contracts most strongly against the insurer in the first instance. (<u>See</u> Docket Entry 97 at 15 (citing <u>Kapiloff</u>, 155 F.3d at 495).) Finally, Randolph Bank asserts that portions of Maryland law as understood in <u>Kapiloff</u> are not in line with North Carolina law – specifically the case of <u>Durham v. Cox</u>, 65 N.C. App 739, 310 S.E.2d 371 (1984).

   <u>Durham</u> dealt with a homeowner's policy which explicitly stated: "'This coverage excludes structures used in whole or part for business purposes.'" <u>Id.</u> at 741-42, 310 S.E.2d at 373. The insured, however, built an appurtenant structure to his home which he used for his upholstery business; moreover, the insured requested, and the insurer issued, an "HO-48," which described the structure as a "garage building used for storage and upholstery work." <u>Id.</u> at 743, 310 S.E.2d at 374. In addition, as a result, the insured paid a higher premium. <u>Id.</u> When the building was

destroyed by fire, the insurer sought to avoid coverage based on the language of the policy and the insured contended that waiver and/or estoppel precluded the insurer from denying its obligation to provide coverage.  Id. at 743-44, 310 S.E.2d at 374.

In analyzing this issue, the North Carolina Court of Appeals noted: "Our courts have long followed the general rule that the doctrines of waiver and estoppel are not available to bring within the coverage of an insurance policy risks not covered by its terms, or risks expressly excluded therefrom." Id. at 744, 310 S.E.2d at 374-75.  However, the court then concluded:

> [T]he "business use" provision regarding appurtenant structures in the subject homeowners policy is a condition working a forfeiture, which may be impliedly waived by the acts and conduct of the insurer.  The doctrines of implied waiver and estoppel properly apply to such a provision since the property itself, an appurtenant structure, and the risk, loss due to fire, are already within the coverage of the policy.

Id. at 747, 310 S.E.2d at 376.  Accordingly, Randolph Bank highlights that where, in construing Maryland law, Kapiloff defined the risk that would be expanded by applying waiver/estoppel as the risk associated with the specific condition at issue, the court in Durham looked at the issue of risk more broadly, i.e., as the risk of fire, something for which the policy already provided coverage. Compare Kapiloff, 155 F.3d at 497, with Durham, 65 N.C. App. at 747, 310 S.E.2d at 376.

As between Kapiloff, a Fourth Circuit decision interpreting Maryland law, and Durham, a North Carolina Court of Appeals decision interpreting North Carolina law, this Court must follow

the reasoning of <u>Durham</u> in matters regarding the interpretation of North Carolina law. Accordingly, as an initial matter, the undersigned concludes that applying the doctrines of waiver/estoppel to the conditions at issue in this case would not expand the Policy to cover risks not currently contemplated by that agreement - i.e., that fire may destroy the subject property. <u>See</u> <u>U.S. Fid. and Guar. Co. v. Country Club of Johnston Cnty., Inc.</u>, 119 N.C. App. 365, 374, 458 S.E.2d 734, 740 (1995) (applying reasoning of <u>Durham</u> in holding waiver/estoppel applicable to insurance forfeiture provisions).

Moreover, a decision as to whether this case involves a waiver on the part of Colony, or circumstances that estop Colony from denying coverage under the Policy, requires resolution of a material question of fact not appropriately determined at the summary judgment stage. Here, in examining the argument presented by Colony, the undersigned construes the facts before the Court in the light most favorable to Randolph Bank and Evergreen/Peterson. From that perspective, the Court cannot say that the 27 days between the time Colony received the inspection report and the fire was insufficient, as a matter of law, for Colony to take action on the inspection as provided - especially in light of testimony that had the inspection been reviewed, immediate action would have occurred.

Colony attempts to frame the issue as not how long it would have taken Colony to act on that inspection report, but rather whether the sheer amount of tasks Ms. Gauthier had to complete

limited the ability to act more quickly.  (See Docket Entry 117 at 5.)  Colony, however, has not cited (and the undersigned has not found) authority supporting the position that where an insurer fails to act due to workload on an agent (unrelated to the matter at issue) the doctrines of waiver/estoppel cannot apply.  On these facts - i.e., the payment of an inspection fee, a 27-day period between the insurer receiving the inspection report and the underlying event, testimony indicating that immediate action would have occurred had said inspection report been reviewed - North Carolina law does not warrant a finding for Colony on this issue at the summary judgment stage.  See generally Peek v. Wachovia Bank & Trust Co., 242 N.C. 1, 12, 86 S.E.2d 745, 753 (1955) ("It is only when a single inference can reasonably be drawn from the undisputed facts that the question of estoppel is one of law for the court to determine."); Mabry v. Nationwide Mut. Fire. Ins. Co., 108 N.C. App. 37, 40-41, 422 S.E. 332, 334 (1992) ("This evidence allows, but does not compel, a finding of waiver on the part of Nationwide and the trial court properly submitted the issue of waiver to the jury." (emphasis in original)).

           b.   <u>Randolph Bank and Evergreen/Peterson's Position</u>

Randolph Bank and Evergreen/Peterson argue the inverse of Colony's position - i.e., that (as a matter of law) waiver and estoppel bar Colony from asserting that misrepresentations in the Application and/or the Supplement authorized Colony to rescind the Policy or that violations of the Fire Protective Safeguards

Endorsement preclude recovery. (<u>See</u> Docket Entry 104 at 9-12, 23; Docket Entry 111 at 8.) In this regard, Randolph Bank and Peterson/Evergreen note the period of time Colony possessed the inspection report (<u>see</u> Docket Entry 104 at 9-12; Docket Entry 111 at 8) and contend that, "by keeping silent about the results of the inspection report, Colony prevented [them] . . . from curing any problems at the Evergreen property or finding replacement coverage with another insurer" (Docket Entry 104 at 8; <u>see also</u> Docket Entry 111 at 8).

In this context, the Court must construe the facts in the light most favorable to Colony and the outcome remains the same as with Colony's summary judgment motion. For the reasons outlined above, whether the 27-day period during which Colony had possession of the inspection report but failed to take action establishes waiver/estoppel involves factual determinations unsuitable for resolution at summary judgment. Accordingly, Randolph Bank and Evergreen/Peterson's Motions for Summary Judgment on this issue should be denied as well.

> ii. <u>Authorization to Rescind Due to Material Misrepresentations</u>

Colony next contends that it has the authority to rescind the Policy under N.C. Gen. Stat. § 58-3-10 due to multiple material misrepresentations in the Application and/or the Supplement regarding the characteristics of the property. (<u>See</u> Docket Entry 76-1 at 22-23 (citing <u>Evanston Ins. Co. v. G&T Fabricators, Inc.</u>, 740 F. Supp. 2d 731 (E.D.N.C. 2010), and <u>Luther v. Seawell</u>, 191

N.C. App. 139, 662 S.E.2d 1 (2008)).)   The statute in question states:

> All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, <u>unless material or fraudulent</u>, will not prevent a recovery on the policy.

N.C. Gen. Stat. § 58-3-10 (emphasis added).   According to Colony, despite the representations in the Application and the Supplement,

> Evergreen and Randolph Bank readily confess that the 501 Building did not have a central station fire alarm, which was misrepresented to Colony.  Second, Evergreen concedes that the power to the 501 Building was turned off in 2009, and was off as of the date of the March 16, 2010, application.  Randolph Bank does not know whether the 501 Building's power was off or not, but defers to Mr. Peterson on the issue.   Third, the 501 Building did not have heat, which was admittedly misrepresented to Colony. Again, Randolph Bank defers to Mr. Peterson as to whether the heat was on.  Next, the 501 Building was not locked and fenced as represented.  Finally, the building was not 100% sprinkled as the sprinkler system did not spray water inside interior offices and buildings.

(Docket Entry 76-1 at 21 (internal citations omitted).)   Colony cites to the deposition testimony of Peterson, representatives of Randolph Bank, and the Captain of the Fire Marshal's office to support each of these contentions.   (<u>Id.</u>)

In response, Randolph Bank and Evergreen/Peterson claim that Colony cannot show that any misrepresentations in the Application and/or the Supplement are material as a matter of law in light of past scenarios where Colony faced similar discrepancies between an insurance application and a physical inspection report and merely asked the insured to correct certain items, or took no action at all, rather than rescinding a policy in full.  (Docket Entry 104 at

13-23; Docket Entry 111 at 9-20.) As Randolph Bank notes: "Defendants conducted discovery of Colony's underwriting practices for vacant property policies in 2009 where the inspection reports revealed inconsistencies with the insurance application. Colony produced the underwriting files of twenty such policies. The information from the underwriting files reveals a pattern of Colony waiving allegedly material conditions and instead accepting risks and keeping the premium." (Docket Entry 104 at 18.) Randolph Bank asserts that, in the 20 policies it reviewed in which a discrepancy between the inspection report and the insurance application existed, "Colony rescinded none of them upon receipt of the inspection report containing the alleged inconsistencies." (Id. at 4 (citing Docket Entry 104-22 at 12).)

With respect to each of the alleged material misrepresentations at issue in this case, Randolph Bank has argued as follows:

- Presence of a Central Station Fire Alarm: "[I]n three other policies, where the insurance application stated a central station fire alarm was present and the inspection report received by Colony stated there was no such alarm, Colony took no action to cancel, rescind or otherwise limit coverage for the issued policy." (Id. at 18-19 (citing Docket Entries 104-2, 104-4, 104-6).)

- 100% Sprinklered: "Of the twenty policies produced by Colony, the insurer did not take action on eight of them where the sprinklers were noted on the insurance application but the

inspection report disclosed the absence of such sprinklers."
(*Id.* at 19-20 (citing Docket Entries 104-4, 104-6, 104-10, 104-17, 104-18, 104-19).)

- Power/Electricity: "In a Texas policy, . . . the Vacancy Supplement noted that the power would remain on during vacancy but the inspection report stated the 'utilities were not hooked up.' Upon review of the report, the underwriter was not concerned about the power being off, and no action was taken to turn the power back on." (*Id.* at 20 (citing Docket Entry 104-5).)

- Heat: "In three policies, Colony did not take action upon learning that contrary to the application the heat in the building was not on." (*Id.* at 21 (citing Docket Entries 104-6, 104-17, 104-20).)

- Fenced, Locked: "The other policies did not address discrepancies between [an] inspection report and insurance application with respect to any requirement for fencing and locking of an insured property. However, Colony's contentions of materiality with respect to fencing and locking is [sic] still open to debate. The Fire Protective Safeguards endorsement does not list fencing or locking of the building as a condition of coverage. If fencing and locking are not material enough to be listed as conditions on the endorsement, how is it that alleged misrepresentations in the Vacancy supplement could be deemed material?" (*Id.*)

Finally, Evergreen/Peterson and Randolph Bank contend that alleged misrepresentations regarding sprinkler coverage and fencing cannot provide a basis for rescission because of the ambiguous nature of Colony's inquiry. (Id. at 14-17.) As support for this contention, Randolph Bank quotes Cockerham v. Pilot Life Ins. Co., Inc., 92 N.C. App. 218, 221, 374 S.E.2d 174, 176 (1988), for the proposition that, "[a]n answer to a question in an application for life insurance that is ambiguous and calls for a yes or no answer cannot be false as a matter of law" (Docket Entry 104 at 15) and applies the same reasoning to the instant facts.

In this regard, Randolph Bank argues that "a reasonable interpretation of the phrase '100% sprinklered' is that [501 Hamilton Road property], which is essentially a large warehouse shell, needed to have sprinklers along the entire ceiling of the building." (Id.) Accordingly, Randolph Bank contends that, although Colony "wants to focus the Court on the small office space and structures inside the [501 Hamilton Road property] and argue that because such interior space had no sprinklers then the building was not 100% sprinklered and Defendants made a false representation[,] . . . it is just as reasonable to interpret the phrase to mean sprinklers covering the entire ceiling area of the whole building." (Id. at 16.) Randolph Bank further notes that "Colony claims the building was not fenced on all four sides and thus Defendants made a false representation" (id. at 17); however, Randolph Bank counters that "Colony could have used '100% fenced' as it used '100% sprinklered,' but . . . chose not to." (Id.)

-36-

Accordingly, Randolph Bank concludes that, under the reasoning of Cockerman, Defendants' circling of the word "fenced" when the property was fenced on three of its four sides "should not be deemed a false answer." (See id.)

In confronting these issues, the undersigned observes that, to the extent a factual dispute exists as to waiver/estoppel, see discussion supra pp. 25-32, the Court should not enter summary judgment for Colony on the basis of its arguments regarding rescission. Morever, on the evidence before the Court, a genuine issue of material fact exists as to whether the Application and/or the Supplement contained material misrepresentations, notwithstanding Colony's repetition of the mantra that each alleged misrepresentation, "independent of all others, influenced Colony in determining whether to insure the property and its determining as to whether to accept the risk, fix the amount of the premium in the event of such acceptance, or decline the risk" (Docket Entry 76-1 at 8, 9, 11-12). First, courts have recognized that "self-serving declarations of materiality by an underwriter are not always conclusive. . . . Insurers should not be allowed 'to play Monday morning quarterback, potentially voiding all policies that prove to have been bad gambles for them.'" Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58, 67 (D.R.I. 1996) (quoting Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 567 (11th Cir. 1990)). Second, the record reflects that, in the past, when faced with similar discrepancies, Colony has appeared to take actions

inconsistent with its current position.[8]  Finally, "[m]ateriality
is generally a question of fact for the jury."  <u>Latta v. Rainey</u>,
202 N.C. App. 587, 599, 689 S.E.2d 898, 909 (2010).  Accordingly,
the Court should decline to enter summary judgment as to whether
the Application and/or the Supplement contain material
misrepresentations that would permit rescission.

    iii. <u>Violation of Fire Protective Safeguards Endorsement</u>

Next, Colony contends that, even absent rescission, violations
of the Fire Protective Safeguards Endorsement preclude coverage.
(<u>See</u> Docket Entry 76-1 at 25.)  Colony notes that the Fire
Protective Safeguards Endorsement states: "'As a condition of this
insurance, you are required to maintain the protective devices or
services listed in the Schedule above.'"  (<u>Id.</u> (quoting Docket
Entry 1-2 at 15).)  Per Colony, "[t]he 'Schedule' references
symbols 'P-1' & P-9.'  The 'P-9' requirement refers to the
protective system described in the Schedule, meaning 'fire
extinguishers, all utilities must remain on and functioning.'"
(<u>Id.</u>)  The P-1 requirement mandates the presence of an automatic
sprinkler system.  (<u>See</u> Docket Entry 1-2 at 15.)  Colony thus
reasons that, because Evergreen has admitted that neither the power
nor the gas were on, and because no dispute exists as to the fact
that the 501 Hamilton Road property's fire extinguishers lacked

---

[8] The undersigned also notes that Colony's contention that the
prior fire at 261 Hamilton Road made Colony more sensitive with
respect to any misrepresentation in the Application and/or the
Supplement (<u>see</u> Docket Entry 76-1 at 9 (citing Docket Entry 88 at
11)) appears to conflict with Colony's failure to review the
physical inspection report promptly.

proper tagging and inspection, the Policy provides no coverage. (<u>See</u> Docket Entry 76-1 at 25-26.)

Randolph Bank contends that "the endorsement nonetheless does not provide Colony the basis for entry of summary judgment in its favor." (Docket Entry 104 at 23.) Specifically, Randolph Bank notes that, although the Fire Protective Safeguards Endorsement requires an "Automatic Sprinkler System," "Fire Extinguishers," and that "All Utilities Must Remain on and Functioning" (<u>see</u> Docket Entry 104 at 3), Colony cannot show, as a matter of law, that violations of the safeguards at issue (or violations beyond the merely technical) occurred. Randolph Bank again breaks down each requirement and argues the following:

- Sprinkler System: "At the time of the May 18 fire, the only reason the sprinklers did not activate is because a vandal cut the chains securing the water valves in an underground pit at the property and turned off the water supply to the sprinklers. The sprinkler system met national standards and was operational up until the vandalism occurred." (<u>Id.</u> at 23-24 (citing Docket Entry 104-25 at 10-12; Docket Entry 104-24 at 14-15).)

- Fire Extinguishers: The April 21, 2010, inspection report noted that the building had fire extinguishers described as "acceptable." (<u>Id.</u> at 24 (citing Docket Entry 97-11 at 98).)

- Utilities: Under North Carolina law, "'[i]nsurance contract provisions which are conditions to liability under the contract would be interpreted consistent with the purpose

underlying them.'" (Id. at 24-25 (quoting Bond/Tec, Inc. v. Scottsdale Ins. Co., 174 N.C. App. 820, 823, 622 S.E.2d 165, 168 (2005)) (additional citations and internal quotation marks omitted).) Because the Fire Protective Safeguards Endorsement has the purpose of minimizing fire risk and, "as admitted by Colony's Rule 30(b)(6) representative, any lack of utilities being on in the building had nothing to do with causing or contributing to the May 18 fire" (id. at 25 (citing Docket Entry 104-24 at 9-13)), any breach was merely technical and would not relieve Colony of its obligation to provide coverage.

Initially, and as in the case of Colony's argument regarding material misrepresentations in the Application and/or the Supplement, because a genuine issue of material fact as to waiver/estoppel remains, see discussion supra pp. 25-32, the Court should not enter judgment as a matter of law for Colony on the basis of violations of the Fire Protective Safeguards Endorsement.

In addition, an independent issue of material fact exists as to any claimed breach of the Fire Protective Safeguards Endorsement. With respect to requirements that the 501 Hamilton Road property have an automatic sprinkler system and fire extinguishers, sufficient evidence exists to support a finding that the property was not in violation of these conditions. Moreover, with respect to the requirement that all utilities remain on, although Randolph Bank and Evergreen/Peterson concede that power to

the property was off, a finding of summary judgment is inappropriate. Colony contends:

> As stated by Professor Couch:
>
> "If an insured breaches a condition of the policy, it is immaterial that the breach was in no manner whatsoever connected with, or that it did not at all occasion, the loss, for the warranty is a condition on which the validity of the contract rests, which failing, the contract fails."
>
> *G. Couch, R. Anderson & M. Rhodes Casualty Insurance* §36:42 at 471-72 (1985).
>
> North Carolina follows the same Rule. *See Beckwith v. American Home Assurance Co.*, 565 F. Supp. 458, 461 (W.D.N.C. 1983) (noting that when a policy condition is breached thereby suspending coverage and increasing the risk, no causal connection between the breach and the subsequent loss need be demonstrated).

As <u>Beckwith</u> states, and Colony correctly notes in its parenthetical citation, where a breach <u>increases a risk</u>, an insurer need not demonstrate an actual causal connection between the breach and a loss to avoid coverage. However, Colony has not shown, as a matter of law, that, where the water controlling the sprinkler system remained on, a lack of power or heat increased the risk of fire. Accordingly, Colony's motion for summary judgment on this issue should be denied as well.

### iv. <u>Machinery as Permanently Installed</u>

Colony, Randolph Bank and Evergreen/Peterson all seek summary judgment for their respective positions as to whether the machinery in the building was permanently installed within the meaning of the Policy, such that it falls under the Policy's $1M Building Limit

-41-

rather than the $3.5M Personal Property Limit. (<u>See</u> Docket Entry 76-1 at 29-34; Docket Entry 92 at 15-19; Docket Entry 97 at 16-19.)

a.  <u>Colony's Position</u>

Colony notes that any "permanently installed" machinery and equipment "falls within the $1M Building limit, not the $3.5M business personal property limit." (Docket Entry 76-1 at 12.) Moreover, Colony contends that Randolph Bank and Evergreen/Peterson should be bound by:

1)  Evergreen's answer to Interrogatory No. 5 (which sought identification of "'any and all machinery and/or equipment that was permanently installed in the building at the time of fire'") that "'[a]ll of the equipment identified by ECT 000184-000205 was permanently installed at the time of the fire, except for the flatbed truck and forklift'" (<u>id.</u> at 30 (quoting Docket Entry 76-2 at 30-31)); and

2)  Peterson's deposition testimony, in which, in response to the question, "'So the permanently installed machinery and equipment which you identified on Exhibit 14 and the extruder falls within the definition of building in this policy, right?,'" Peterson stated: "'I guess so'" (<u>id.</u> at 31 (quoting Docket Entry 90 at 65)).

In support of this contention, Colony cites to a number of cases standing for the proposition that a party may not contradict its own testimony in order to create a genuine issue of material fact. (<u>See</u> <u>id.</u> at 31-32 (citing <u>Tonley v. Norfolk & W. R.R. Co.</u>,

887 F. 2d 498, 501 (4th Cir. 1989); <u>Bank of Ill. v. Allied Signal Safety Restraint Sys.</u>, 75 F.3d 1162, 1165-72 (7th Cir. 1996); <u>Blundell v. Wake Forest Univ. Baptist Med. Ctr.</u>, No. 1:03CV998, 2006 WL 694630, at *4 (M.D.N.C. Mar. 15, 2006) (unpublished); <u>The Attic Tent, Inc. v. Copeland</u>, No. 3:06CV66-W, 2007 WL 174679, at *7 (W.D.N.C. Jan. 22, 2007) (unpublished); <u>Tourgeman v. Collins Fin. Servs., Inc.</u>, No. 08-CV-1392 JLS, 2010 WL 4817990, at *2 (S.D. Ca. Nov. 22, 2010) (unpublished); <u>Wyeth v. Lupin, Ltd.</u>, 252 F.R.D. 295, 296 (D. Md. 2008); <u>Paul Harris Stores, Inc. v. Pricewaterhouse Coopers, LLP</u>, No. 1:02-CV-1014, 2006 WL 2644935, at *3 (S.D. Ind. Sept. 14, 2006) (unpublished)).) Colony also contends that the usage of the machinery demonstrates that it was permanently installed. (<u>See</u> <u>id.</u> at 33-34.)

Randolph Bank and Evergreen/Peterson respond that the term "permanently installed" is ambiguous and point out that, despite Peterson's initial indication in his deposition that he "guess[ed]" the machinery was permanently installed, later in his deposition, Peterson testified as follows:

> Permanently [sic] would mean that you could never take it out. It was there forever; it's permanent. The machinery is never permanent. You could take the machinery out. Permanent would be a structure wall. If you built a structure in there or the piece of machinery was that [sic] could never be taken out or it would ruin the building, then it would be permanent. All of this machinery is able to take out [sic].

(Docket Entry 104 at 33; Docket Entry 90 at 66; <u>see also</u> Docket Entry 92 at 17-18.)

Although a party may not create a genuine issue of material fact by submitting evidence (such as an affidavit) that contradicts its own previously adduced evidence (such as deposition testimony), see, e.g., Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999), the instant dispute does not fit that mold. The question before the Court is not whether Randolph Bank and Evergreen/Peterson may avoid summary judgment by relying on evidence conjured up to avoid the force of other evidence they provided. Rather, the Court must decide whether the evidence from Evergreen and Peterson cited by Colony establishes as a matter of law that the machinery in question was "permanently installed" within the meaning of the Policy. The interrogatory at issue does not appear to reference the Policy and Peterson's deposition testimony does not constitute a clear admission about whether the machinery qualified as "permanently installed" under the Policy. The record evidence cited by Colony thus does not show its entitlement to judgment as a matter of law on this point.

The Court also should decline to hold that the machinery's use compels a finding that it was "permanently installed" for purposes of the Policy. Colony, Randolph Bank and Evergreen/Peterson cite different definitions of the term "permanent" and argue that the machinery in question fits within the respective definitions. (See Docket Entry 76-1 at 33; Docket Entry 97 at 17; Docket Entry 104 at 30-31.) However, consultation of dictionary definitions does not necessarily resolve the matter because the Court must "interpret

-44-

[the] contract according to <u>the intent of the parties to the</u> <u>contract</u>, unless such intent is contrary to law." <u>Bueltel v.</u> <u>Lumber Mut. Ins. Co.</u>, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209 (1999) (emphasis added).

To support its contention on this point, Colony relies on the above-discussed evidence from Evergreen and Peterson regarding the condition of the machinery, evidence that the machinery was bolted to the floor, and evidence that Peterson intended for the machinery to remain in the building even after sale of the building. (<u>See</u> Docket Entry 76-1 at 33.) Randolph Bank and Evergreen/Peterson, on the other hand, cite the fuller version of Peterson's deposition testimony regarding this matter (<u>see</u> Docket Entry 104 at 33-34; Docket Entry 111 at 24-25), argue that requirements of the Occupational Safety and Health Administration explain why the machinery was bolted to the floor (<u>see</u> Docket Entry 97 at 18), and point to evidence showing that the machinery was treated as personal property (such as the filing of UCC financing statements covering the machinery and the purchasing of a $3.5M Personal Property Limit to cover said property in addition to the $1M Building Limit) (<u>see</u> <u>id.</u> at 18-19; Docket Entry 111 at 25-26). Such competing evidence renders this issue inappropriate for summary judgment.

b. <u>Randolph Bank and Evergreen/Peterson's</u> <u>Position</u>

The Court, likewise, should not grant summary judgment for Randolph Bank and Evergreen/Peterson on their contentions that the

machinery was not permanently installed. Taking the facts in the light most favorable to Colony, the issues detailed above preclude resolution of this issue at this stage in the proceedings. Accordingly, the Court should deny Randolph Bank and Evergreen/Peterson's Motions for Summary Judgment as to this matter as well.

> v.  Randolph Bank's Rights as a Mortgagee under the Policy

The Policy identifies Randolph Bank as a "Loss Payee" and "Mortgagee." (Docket Entry 1-3 at 11-12.) Colony contends that Randolph Bank's rights as a Mortgagee under the Policy are governed by the Policy's "mortgageholders" provision, which states in relevant part:

> We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown on the declarations in their order of precedence, as interest may appear.

(Docket Entry 76-1 at 27 (quoting Docket Entry 1-1 at 25-27) (emphasis added).) Accordingly, Colony concludes that Randolph Bank's recovery as a Mortgagee falls subject to the $1M Building Limit and does not extend to the $3.5M Personal Property Limit.

In support of its position, Colony cites Florist Mut. Ins. Co. v. Agstar of N.M., No. 03-1164 JBLFG, 2005 WL 3664325, at *6 (D.N.M. Nov. 11, 2005) (unpublished). (Docket Entry 76-1 at 24-25.) In that case, the court analyzed the relationship between a mortageholders provision, such as the one present in the instant action, and a loss payable clause. Florist Mut., 2005 WL 3664325, at *6-7. In so doing, that court cited case law addressing nearly

identical matters which concluded that: (1) a mortgageholders provision in an insurance contract represents a distinct agreement between the mortgageholder and the insurer, separate from the remainder of the contract; and (2) the unambiguous terms of said agreement would limit recovery to the amount stated specifically for buildings and structures.  Id.

Randolph Bank did not address this argument in its Response. (See Docket Entry 104.)  Moreover, Colony raised this same argument in its Response to Randolph Bank's Motion for Partial Summary Judgment (Docket Entry 107 at 10-11), and Randolph Bank again did not address said argument in its Reply (see Docket Entry 115). Further, Randolph Bank appears to concede this point in its own Motion for Partial Summary Judgment against Colony.  (See Docket Entry 95 at 1.)  In said Motion, Randolph Bank seeks a declaration confirming its "entitl[ment] to Building coverage under the Policy because it is a [M]ortgagee under the Policy" (id. at 4), but does not similarly reference an entitlement to recovery under the Personal Property Limit based on its status as a "Mortgagee" under the Policy (see id.).

Regardless of any concession by Randolph Bank, the undersigned finds the reasoning in Florist Mutual persuasive.  The rights of Randolph Bank as a Loss Payee and a Mortgagee under the Policy are distinct from one another and turn on the plain terms of the Policy.  With respect to those rights as a Mortgagee, the Policy limits payment to "loss of or damage to buildings or structures." (Docket Entry 1-1 at 25.)  Accordingly, Randolph Bank's rights as

-47-

a Mortgagee extend only to the $1M Building Limit.  However, this finding does not affect Randolph Bank's rights as a Loss Payee, as to which it assumes the position of the Insured.

> ### vi.  Randolph Bank's Right to Recover Independently as a Mortgagee

Randolph Bank contends that its rights as a Mortgagee under the Policy, which represent a separate and distinct agreement between Colony and Randolph Bank, remain unaffected by any alleged misrepresentations made in the Application and/or the Supplement. (See Docket Entry 97 at 7-8.)  In Response, Colony, although acknowledging that "North Carolina recognizes a 'standard or union mortgage clause' which acts as a distinct and independent contract between the insurance company and the mortgagee" (Docket Entry 107 at 7 (citing Nationwide Mut. Ins. Co. v. Dempsey, 128 N.C. App. 641, 643, 495 S.E.2d 914, 915 (1998))), argues that Colony's ability to rescind the Policy under N.C. Gen. Stat. § 58-3-10 would completely extinguish Randolph Bank's rights, because rescission "is an abrogation or undoing of the contract from its beginning," Johnson v. Smith, Scott & Assocs., Inc., 77 N.C. App. 386, 389, 335 S.E.2d 205, 207 (1985).

As noted above, North Carolina law provides that:

> All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy.

N.C. Gen. Stat. § 58-3-10.  However, the Parties have not cited, and independent research has not revealed, North Carolina case law

interpreting N.C. Gen. Stat. § 58-3-10 on similar facts to the case at hand. Analogous case law from other jurisdictions is scarce as well.

The undersigned, however, is persuaded by the reasoning of Norwest Mortg., Inc. v. Nationwide Mut. Fire. Ins. Co., 718 So.2d 15 (Ala. 1998). In Norwest, the Alabama Supreme Court overturned a lower court decision which had granted summary judgment for an insurer on the basis that a rescission of an insurance policy *ab initio* extinguished the rights of a mortgagee, pursuant to Ala. Code § 27-14-7, which read as follows:

> (a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Norwest, 718 So.2d at 16 n.1 (citing Ala. Code § 27-14-7).

After determining that the language in the policy at issue constituted a standard mortgageholders clause, the court

determined: "Based on the clear language of the mortgage clause, we hold that a separate contract was created between Norwest and Nationwide - a contract that was not subject to the nullifying effects of § 27-14-7." Id. at 17.

This Court should reach the same conclusion in this case. The mortgageholders provision in the Policy states in relevant part:

> If we deny [the insured's] claim because of [the insured's] acts or because [the insured has] failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payments if the mortgageholder:
>
>> (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
>>
>> (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
>>
>> (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

(Docket Entry 1-1 at 25.) Under the plain language of the mortgageholders clause and North Carolina case law, a separate agreement existed between Colony and Randolph Bank as a Mortgagee. Accordingly, even if Colony may rescind its Agreement with Evergreen/Peterson (and thus Randolph Bank as a Loss Payee) pursuant to N.C. Gen. Stat. § 58-3-10 due to material misrepresentations in the Application and/or the Supplement, Randolph Bank's rights as a Mortgagee would survive. The Court thus should grant Randolph Bank's Motion for Summary Judgment on this point.

B.  **Randolph Bank's Motion for Partial Summary Judgment on Third and Fourth Counter-Crossclaims Against Evergreen Composite Technology, LLC (Docket Entry 93)**

Randolph Bank has filed a separate Motion for Summary Judgment solely on its claims against Evergreen for "Breach of Contract – First Promissory Note" and "Breach of Contract – Second Promissory Note," which address Evergreen's obligations to Randolph Bank under both the first and second promissory notes issued to Evergreen by Randolph Bank in connection with the purchase the properties.  (See Docket Entry 93, ¶¶ 14-16.)  The record reflects Evergreen does not oppose Randolph Bank's Motion.  (See Docket Entry dated Apr. 5, 2012.)  Accordingly, Randolph Bank's Motion for Partial Summary Judgment on Third and Fourth Counter-Crossclaims Against Evergreen (Docket Entry 93) should be granted.

## IV. Motions by Clayton and HPB

Lastly, the undersigned turns to (1) Clayton and HPB's Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim (Docket Entry 36); (2) Clayton and HPB's Motion to Dismiss Third-Party Claim for Breach of Fiduciary Duty for Failure to State a Claim (Docket Entry 74); and (3) Clayton and HPB's Motion for Summary Judgment as to All Claims brought against them by Evergreen/Peterson (Docket Entry 82).

A.  **Clayton and HPB's Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim (Docket Entry 36)**

Clayton and HPB have moved for judgment on the pleadings and to dismiss for failure to state a claim, because Colony seeks only a declaratory judgment against Evergreen/Peterson such that Clayton

and HPB cannot "be liable to [Third-Party Plaintiffs] for all or part of the claim against [them]," Fed. R. Civ. P. 14(a)(1).  (See Docket Entry 36 at 1.)  The Federal Rules of Civil Procedure provide in relevant part: "A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  Whether to grant or deny a third-party complaint rests with the sound discretion of the court.  See Glens Falls Indem. Co. v. Atlantic Bldg. Corp., 199 F.2d 60, 63-64 (4th Cir. 1952); Xquisite Transp., LLC v. Travelers Indem. Co., Civil No. WDQ-08-2905, 2009 WL 3246960, at *1 (D. Md. Oct. 2, 2009) (unpublished); Dishong v. Peabody Corp., 219 F.R.D. 382, 385 (E.D. Va. 2003).

The Court should reject Clayton and HPB's challenge to the Third-Party Complaint in this case because they take too narrow a view of Fed. R. Civ. P. 14.  Courts examining similar facts have found third-party complaints appropriate.  See, e.g., State Coll. Area Sch. Dist. v. Royal Bank of Can., 825 F. Supp. 2d 573, 582 (M.D. Pa. 2011) ("Consistent with the decision in Monarch [Life Ins. Co. v. Donahue, 702 F. Supp. 1195 (E.D. Pa. 1989)], Britamco [Underwriters, Inc. v. B & D Milmont Inn, Inc., No. Civ. A. 95-CV-6039, 1996 WL 445355 (E.D. Pa. Aug. 6, 1996) (unpublished)], and Hartford [Cas. Ins. Co. v. ACC Meat Co., LLC, Civil Action No. 1:10-CV-1875, 2011 WL 398087 (M.D. Pa. Feb. 2. 2011) (unpublished)], as well as those of many district courts throughout the country and respected authorities on federal civil practice, we

hold that where a declaratory judgment in a plaintiff's favor may result in a loss to the defendant, the broad purposes of Rule 14(a) permit the defendant to join a third-party defendant who may be liable to it, in whole or in part, for that loss."); <u>Hartford</u>, 2011 WL 398087, at *2 ("[C]ourts have permitted joinder of a middle-man or insurance broker as a third-party defendant in declaratory judgment actions by insurance companies seeking a declaration of non-coverage or seeking the voiding of an insurance policy." (citing, <i>inter alia</i>, <u>United of Omaha Life Ins. Co. v. Reed</u>, 649 F. Supp. 837 (D. Kan. 1986) and <u>Old Republic Ins. Co. v. Comcast, Inc.</u>, 99 F.R.D. 566 (S.D.N.Y. 1983)).

Moreover, the two primary cases cited by Clayton and HPB in support of their position, <u>DirecTV, Inc. v. Amerilink Corp.</u>, No. 1:01CV953, 2002 WL 31165149 (M.D.N.C. Aug. 21, 2002) (unpublished) (Beaty, J.), and <u>Kohl's Dep't Stores, Inc. v. Target Stores, Inc.</u>, 214 F.R.D. 406 (E.D. Va. 2003), are distinguishable. In <u>DirecTV</u>, PrimeTV, against whom Amerilink sought a declaratory judgment that it owed no money under a certain contract, sought to implead Perfect-10 as a third-party defendant. <u>DirecTV</u>, 2002 WL 31165149, *3. In denying that request, now-Chief Judge Beaty noted that "PrimeTV does not allege that Perfect-10 is in some way responsible for its breach of contract with Amerilink, nor does PrimeTV assert that Perfect-10 is an indemnitor or a joint tortfeasor who is required to reimburse PrimeTV for any damages it incurs from Amerilink's breach of contract suit." <u>Id.</u> In this case, however, Peterson/Evergreen do allege that Clayton and HPB are responsible

for the alleged misrepresentations that Colony contends free it from its obligations to Evergreen/Peterson and Randolph Bank.

Kohl's, likewise, is inapplicable. In Kohl's, certain building owners filed an action against a land developer after discovering structural damage to each of their respective buildings. Kohl's, 214 F.R.D. at 409. After determining that the structural defects resulted from the use of a defective fill material, Kohl's impleaded the general contractor. Id. The general contractor impleaded the subcontractor responsible for the use of said fill material who, in turn, impleaded ReUse, the manufacturer of the fill material. Id. at 410. ReUse then sought to implead several of the contractors, contending that the structural defects arose from those contractors' failure to exercise reasonable care. Id. at 411. Before addressing ReUse's motions, the court observed as follows:

> [I]t is important to note that the [b]uilding [o]wners have raised claims only respecting the site improvement work performed in preparation for the construction of the buildings. For reasons sufficient unto themselves, the [b]uilding [o]wners have decided to forego the opportunity to pursue claims against the various contractors that performed the work on the various buildings, and thus, in their complaints, the [b]uilding [o]wners have attributed none of the damage to the buildings to the actual construction of the buildings themselves. Rather, they have blamed squarely and directly the fill material that was supplied by ReUse. Stated differently, no party upstream of ReUse in this litigation has made any claim respecting the actual construction of the buildings.

Id. at 411-12. Accordingly, in that action, and unlike on the instant facts, the party seeking impleader sought to join parties on an entirely separate theory of liability, not on the basis that,

if the party seeking impleader was found liable, the proposed third-party caused that liability to accrue.

Under these circumstances, the Court should deny Clayton and HPB's Motion for Judgment on the Pleadings and to Dismiss for Failure to State a Claim (Docket Entry 36).

B.    Clayton and HPB's Motion to Dismiss (Docket Entry 74)

Clayton and HPB have separately filed a Motion to Dismiss Third-Party Claim for Breach of Fiduciary Duty for Failure to State a Claim (Docket Entry 74), as to which they contend:

> Nowhere in the [T]hird-[P]arty [C]omplaint do [Evergreen/Peterson] allege or assert that there was any request to [Clayton and HPB] for information or advice as to the nature and extent of the coverage under the Colony [P]olicy, and there is no assertion by [Evergreen/Peterson] concerning the inaccurate naming of the insured in the policy. Hence, there are insufficient allegations of fact sufficient to state a claim upon which relief can be granted for breach of fiduciary duty in conjunction with the insurance policy application transaction at issue . . . .

(Docket Entry 75 at 4.)

Evergreen and Peterson respond that Clayton and HPB's "motion to dismiss the breach of fiduciary duty claim should be converted into a motion for summary judgment and merged with [their] motion for summary judgment on the same claim." (Docket Entry 112 at 7.) In this regard, Evergreen and Peterson note that discovery closed on January 6, 2012, Clayton and HPB first filed a motion to dismiss Evergreen and Peterson's breach of fiduciary duty claim on February 3, 2012, and, on the following business day, Clayton and HPB moved for summary judgment on the breach of fiduciary duty claim. (See id. at 6-7.) Evergreen and Peterson further observe that Clayton

and HPB submitted evidence outside of the Third-Party Complaint in support of their Motion for Summary Judgment. (See id. at 7.) In their Reply, Clayton and HPB oppose conversion of their Motion to Dismiss into a Motion for Summary Judgment because they "did not submit any extraneous material in support of the pending motion to dismiss." (Docket Entry 122 at 3.)

"It is well-settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment . . . ." Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). In order to do so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Given the procedural posture of the case, the Parties' opportunity to conduct full discovery, and the Parties having fully presented arguments on the issue of summary judgment, the undersigned deems conversion of Clayton and HPB's Motion to Dismiss into a Motion for Summary Judgment appropriate. See, e.g., Bradford v. HSBC Mortg. Corp., ___ F. Supp. 2d ___, ___ n.24, 2011 WL 6148486, *6 n.24 (E.D. Va. 2011) ("This record contains volumes of pertinent material outside the pleadings, including interrogatory responses and other documents that were neither attached nor integral to the complaint. . . . Because the lengthy discovery period and the briefing schedule have given the parties a reasonable opportunity to present all the material that is pertinent to the motion, it is therefore appropriate to treat defendants' motions to dismiss . . . as

motions for summary judgment thereon." (internal citations and quotation marks omitted)).

In making this determination, the undersigned acknowledges that Clayton and HPB did not attach matters outside the pleadings to their Motion to Dismiss. (See Docket Entry 74.) The applicable rule, however, does not make that fact determinative, but instead focuses more generally on whether "matters outside the pleadings are presented" to the Court (without addressing which party provided said materials or in what context) and whether all parties had "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Moreover, Clayton and HPB did present matters outside the pleadings in challenging the sufficiency, as a matter of law, of the same claim immediately after filing their Motion to Dismiss (when they filed their Motion for Summary Judgment). (Compare Docket Entry 74 (dated Friday, Feb. 3, 2012), with Docket Entry 82 (dated Monday, Feb. 6, 2012).) Accordingly, on the unique facts of this case, the undersigned deems conversion appropriate.[9]

----

[9] Considering the Motion to Dismiss separately would likely result in no substantive difference in the recommended disposition. Said Motion to Dismiss is grounded on a perceived failure of the Third-Party Complaint to allege: (1) a fiduciary relationship between Evergreen/Peterson, on the one hand, and Clayton/HPB, on the other, and (2) reliance by Evergreen/Peterson upon any alleged breaches of that fiduciary relationship. (See Docket Entry 74 at 1.) The Third-Party Complaint alleges that Clayton, as an agent for HPB, was responsible for procuring insurance for 501 Hamilton Road, and, in doing so, made inaccurate representations to Colony that may prove to be material. (See Docket Entry 14, ¶¶ 19, 21, 25.) Under North Carolina law, "[a]n insurance agent acts as a fiduciary with respect to procuring insurance for an insured (continued...)

C. **Clayton and HPB's Motion for Summary Judgment (Docket Entry 82)**

Clayton and HPB move for summary judgment on the grounds that "the pleadings, depositions, answers to interrogatories, admissions on file and affidavit of Michael W. Gay show that, as a matter of law, there was no fiduciary relationship between [them and Evergreen/Peterson] as to the transaction referenced in the [T]hird-[P]arty [C]omplaint and no breach of any fiduciary duty owed by [Clayton and HPB] in this matter." (Docket Entry 82 at 1-2.)  In addition, Clayton and HPB assert that the "evidence discloses no negligence by [them] or any actionable duty owed to [Evergreen/Peterson] that was breached by [Clayton and HPB]." (<u>Id.</u> at 2.)

### i.  Existence of Fiduciary Duty

The argument by Clayton and HPB regarding the absence of a fiduciary duty rests on <u>Cobb v. Pennsylvania Life Ins. Co.</u>, ___ N.C. App. ___, ___, 715 S.E.2d 541, 548 (2011), which (citing <u>Phillips by Phillips v. State Farm Mut. Auto. Ins. Co.</u>, 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998)) states: "An insurance agent has a limited fiduciary duty to the insured, to wit, the agent must correctly name the insured in the policy and correctly

---

[9](...continued)
. . . ." <u>Phillips by Phillips v. State Farm Mut. Auto. Ins. Co.</u>, 129 N.C. App. 111, 113, 497 S.E.2d 325, 327 (1998).  Accordingly, by alleging that Evergreen/Peterson was an Insured under the Policy, that Clayton operated as an agent in procuring the Policy and, in that role, made certain misrepresentations in the course of procuring the Policy, it appears the Third-Party Complaint sufficiently asserts the existence and breach of a fiduciary relationship as well as reliance.

advise the insured of the nature and context of his coverage under the policy." (See Docket Entry 83 at 13-15.) Phillips, however, states in full: "An insurance agent acts as a fiduciary with respect to procuring insurance for an insured, correctly naming the insured in the policy, and correctly advising the insured about the nature and extent of his coverage." Phillips, 129 N.C. App at 11, 497 S.E.2d at 327 (emphasis added). In the context of Cobb, which addressed a claim that an insurance agent had a duty to advise the plaintiff of certain provisions in the policy, a shortened, paraphrased reference to Phillips sufficed to adequately address the issues presented. Here, where the fiduciary relationship allegedly arose from the events surrounding the actual procurement of the Policy, it does not. No basis exists to infer that the court in Cobb sought to abrogate the fiduciary duties of an insurance agent as set forth in Phillips, and Clayton and HPB's argument on this point thus fails.

### ii. Negligence and Breach of Fiduciary Duty

"Like the breach of fiduciary duty claim, Evergreen[/Peterson]'s negligence claim arises from Clayton[/HPB]'s failure to procure insurance properly." (Docket Entry 112 at 17.) In other words, Evergreen/Peterson contend that, if "errors on the Vacancy Supplement allow Colony to avoid coverage, then Clayton[/HPB] clearly failed to obtain insurance properly . . . [in light of evidence in the record that] Clayton, not Peterson, completed the document." (Id. (citing Docket Entry 112-1 at 8-10).) Clayton and HPB contend that they were not negligent (and/or

did not breach any fiduciary duty) in procuring insurance or that, at the very least, Peterson/Evergreen were contributorily negligent in failing to review the Application and/or the Supplement. (<u>See</u> Docket Entry 83 at 5-13.)

Such disputes regarding negligence and contributory negligence generally constitute matters unsuitable for resolution at summary judgment. <u>See, e.g.</u>, <u>MCI Constructors, Inc. v. Hazen & Sawyer, P.C.</u>, 405 F. Supp. 2d 621, 627 (M.D.N.C. 2005) (quoting <u>Martishius v. Carolco Studios, Inc.</u>, 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002)); <u>Geiger v. Guilford Col. Cnty. Volunteer Fireman's Ass'n, Inc.</u>, 668 F. Supp. 492, 497 (M.D.N.C. 1987). To avoid that conclusion, Clayton and HPB rely in large part on <u>Baggett v. Summerlin Ins. and Realty, Inc.</u>, 354 N.C. 347, 554 S.E.2d 336 (2001), to support their position. (<u>See</u> Docket Entry 83 at 6, 9.)

In <u>Baggett</u>, the North Carolina Supreme Court overturned a North Carolina Court of Appeals decision to deny summary judgment, instead adopting the reasoning of the dissenting opinion below. The facts of the case, as outlined in the North Carolina Court of Appeals decision, involved an insured who asked an insurance agent for a policy reflecting the same coverages as a prior policy, which did not include flood insurance. <u>Baggett v. Summerlin Ins. and Realty, Inc.</u>, 143 N.C. App. 43, 45, 545 S.E.2d 462, 464 (2001). When the insured's property was destroyed by a flood, the insured brought an action against the agent for negligence. <u>Id.</u> at 47, 545 S.E.2d at 464. The dissenting opinion (which the North Carolina Supreme Court later adopted) noted:

> Plaintiffs' evidence shows that [the insured] provided [the agent] a copy of her existing insurance policy. [The insured] requested [the agent] to provide "the same coverage" at a cheaper rate. In response to that request, [the agent] quoted a premium and ordered an insurance policy with terms substantially similar to [the insured's] existing policy. Both policies expressly excluded coverage for losses due to flood damage.

Id. at 51, 545 S.E.2d at 467. That opinion went on to note: "Where a party has a reasonable opportunity to read the instrument in question, and the language of the instrument is clear, unambiguous and easily understood, failure to read the instrument bars that party from asserting its belief that the policy contained provisions which it does not." Id. at 53, 545 S.E.2d at 468-69 (citing Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 401-02, 126 S.E.2d 135, 138-39 (1962)).

Baggett, however, does not compel judgment as a matter of law in favor of HPB and Clayton on the instant facts. Unlike in Baggett, Evergreen and Peterson have cited evidence that "Peterson did not see the [Supplement] or know of its existence until after this litigation began." (Docket Entry 112 at 19 (citing Docket Entry 90 112-1 at 5, 8).) Furthermore, Evergreen and Peterson contend that, despite providing Clayton with the report from FPS indicating that there was no power in the building, "Clayton did not review the FPS report; rather, he placed the report in his file." (Id. at 4 (citing Docket Entry 112-5 at 15-17).) Finally, this Court has an insufficient basis to declare, as a matter of law, that Peterson had a "reasonable opportunity," Baggett, 143 N.C. App. at 53, 545 S.E.2d at 468-69 (citation omitted), to review

the Application and/or Supplement.  Accordingly, the Court should leave for the finder of fact the question of whether Clayton and HPB were negligent (or breached a fiduciary duty) or Evergreen/Peterson were contributorily negligent.[10]

## V. Conclusion

On the record of this case, a genuine issue of material fact exists as to whether the doctrines of waiver/estoppel prevent Colony from contesting coverage under the Policy.  This issue, along with other material factual disputes, preclude a finding, as a matter of law, that the Application and/or Supplement contain material misrepresentations which permit rescission or that violations of the Fire Protective Safeguards Endorsement occurred which bar coverage.  Moreover, Colony, Randolph Bank and Peterson/Evergreen have all failed to establish an entitlement to judgment as a matter of law on the issue of the permanence of the machinery.  However, Colony's position that Randolph Bank's right to recovery as a Mortgagee is limited to the $1M Building Limit under the terms of the Policy has merit, as does Randolph Bank's position that, as a Mortgagee, its claim to the $1M Building Limit survives regardless of any alleged misrepresentations in the Application and/or the Supplement.  Further, Randolph Bank's separate Motion against Evergreen/Peterson for breach of the first

---

[10] In light of the conflicting evidence as to who caused the provision of inaccurate information to Colony, expert Gay's testimony as to general standards in the insurance industry would not compel judgment as a matter of law for Clayton and HPB.

and second promissory notes related to the purchase of the properties should be granted.

With respect to the motions filed by Clayton and HPB, the Court should deny their Motion for Judgment on the Pleadings because it relies on an unreasonably cramped view of Fed. R. Civ. P. 14(a)(1). In addition, the Court should merge Clayton and HPB's Motion to Dismiss with their Motion for Summary Judgment and should decline to enter summary judgment, because material questions of fact exist as to the claims in the Third-Party Complaint. The Court should reach that conclusion without parsing the affidavit of Clayton and HPB's expert and thus no need exists to rule on the merits of Evergreen/Peterson's Motion to Strike said affidavit. All other pending non-dispositive motions will be granted.

**IT IS THEREFORE ORDERED** that Plaintiff Colony Insurance Company's Requests to File Original Discovery (Docket Entries 86, 118), Consent Motion for Extension of Time for Third-Party Defendants to File their Reply Brief to Defendant Evergreen Composite Technology, LLC's Brief in Response to Third-Party Defendants' Motion to Dismiss and Motion for Summary Judgment (Docket Entry 114), Third-Party Defendants' Motion to Exclude Expert Report of R. Bryan Tilden (Docket Entry 124), and Motion to Seal Documents and for Maintenance of Documents Under Seal (Docket Entry 130) are **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion to Strike

Affidavit of Michael W. Gay (Docket Entry 109) is **DENIED AS MOOT AND/OR UNRIPE.**

**IT IS RECOMMENDED** that Motions [sic] of Third-Party Defendants Edward L. Clayton, Jr. and HPB Insurance Group, Inc. for Judgment on the Pleadings and to Dismiss for Failure to State a Claim upon which Relief can be Granted (Docket Entry 36), Motion of Third-Party Defendants to Dismiss Third-Party Claim for Breach of Fiduciary Duty for Failure to State a Claim upon which Relief can be Granted (Docket Entry 74), Motion for Summary Judgment of Third-Party Defendants as to All Claims of the Third-Party Plaintiffs Against Them (Docket Entry 82), and Defendants Evergreen Composite Technology, LLC and Charles A. Peterson's Motion for Summary Judgment (Docket Entry 91) be denied.

**IT IS FURTHER RECOMMENDED** that Randolph Bank's Motion for Partial Summary Judgment on Third and Fourth Counter-Crossclaims Against Evergreen Composite Technology, LLC (Docket Entry 93) be granted.

**IT IS FURTHER RECOMMENDED** that Colony Insurance Company's Motion for Summary Judgment or Alternatively for Partial Summary Judgment (Docket Entry 76) be granted in part and denied in part in that the Court should enter judgment as a matter of law that Randolph Bank's right to recovery as a Mortgagee is limited to the $1M Building Limit, but otherwise decline to enter judgment as a matter of law in Colony's favor.

**IT IS FURTHER RECOMMENDED** that Randolph Bank's Motion for Partial Summary Judgment as Against Plaintiff (Docket Entry 95) be

granted in part and denied in part, in that the Court should enter judgment as a matter of law that, as a Mortgagee under the Policy, Randolph Bank can recover under the $1M Building Limit without regard to any misrepresentation in the Application and/or the Supplement, but otherwise should decline to enter judgment as a matter of law in Randolph Bank's favor.

　　　　　　　　　　　　　　　　　　／s/ L. Patrick Auld
　　　　　　　　　　　　　　　　　　**L. Patrick Auld**
　　　　　　　　　　　**United States Magistrate Judge**

May 22, 2012