IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

COLONY INSURANCE COMPANY,    )
                                  )
     Plaintiff,           )
                                  )
     v.                  )            1:10CV581
                                  )
CHARLES A. PETERSON,       )
EVERGREEN COMPOSITE        )
TECHNOLOGY, LLC, and       )
RANDOLPH BANK AND TRUST   )
COMPANY,                    )
                                  )
     Defendants,        )
     Counter Claimants and  )
     Third-Party Plaintiffs, )
                                  )
     v.                  )
                                  )
EDWARD L. CLAYTON, JR., and )
HPB INSURANCE GROUP, INC.,  )
                                  )
     Third-Party Defendants. )

**<u>COURT'S INSTRUCTIONS</u>**
**<u>TO THE JURY</u>**

Members of the Jury:

You have now heard all of the evidence in the case as well
as the final arguments of the lawyers for the parties.

It becomes my duty, therefore, to instruct you on the rules
of law that you must follow and apply in arriving at your
decision in the case.

It is my duty to preside over the trial and to determine
what testimony and evidence are relevant under the law for your

consideration.  It is also my duty at the end of the trial to instruct you on the law applicable to the case.

## DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts.  But in determining what actually happened in this case - that is, in reaching your decision as to the facts - it is your sworn duty to follow the law I am now in the process of defining for you.

You must follow all of my instructions as a whole.  You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I give it to you, regardless of the consequences.

Furthermore, I remind you that objections are not evidence.  The rules of evidence control what matters may be received into evidence.  If I have overruled an objection, you may consider the testimony or evidence.  If I have sustained an objection, you must ignore the question and not speculate as to what the answer may have been.  Furthermore, if I have ordered that evidence be stricken from the record or told you to disregard certain evidence, you must not consider the evidence which I told you to disregard.

## TAKING OF NOTES BY JURORS

As you may recall, I permitted you to take notes during the course of this trial. These notes are for your own personal use, and not for use by anyone else. When you begin your deliberations, you may use your notes to help refresh your memory as to what was said in court. I caution you, however, not to give your notes or the notes of any of the other jurors undue significance in your deliberations.

It is your duty to base your verdict solely upon the testimony and evidence in the case, without prejudice or sympathy. That was the promise you made and the oath you took before being accepted by the parties as jurors in this case, and they have the right to expect nothing less.

-4-

## BURDEN OF PROOF

In a civil lawsuit such as this, the party asserting a claim bears the burden of proof, which means that party must prove every essential fact of his claim by a preponderance of the evidence. Similarly, the party asserting a defense bears the burden of proof as to that defense, which means that party must prove every essential fact of that defense by a preponderance of the evidence.

Thus, in this case, you will be called upon to answer up to 18 questions, referred to in these instructions as "issues." Several issues have subparts, in which you are called upon to answer a specific question. As to each issue or question, you will be asked whether the party with the burden of proof has proved by a preponderance of the evidence the existence of facts necessary to establish the essential facts of that particular claim or defense. If you are persuaded that the party with the burden of proof has proved by a preponderance of the evidence the existence of facts necessary to establish the essential facts of that particular claim or defense, it would be your duty to answer the corresponding issue "Yes" in favor of the party with the burden of proof. If you are not so persuaded, it would be your duty to answer the issue "No." Throughout these instructions, I will instruct you as to the party that bears the burden of proof as to each issue you are then considering.

-5-

As I mentioned earlier, the party with the burden of proof must prove every essential fact to the claim or defense by a preponderance of the evidence. A preponderance of the evidence means the greater weight of the evidence, and those terms may be used interchangeably during these instructions. A preponderance of the evidence means to prove that the fact at issue is more likely true than not true. A "preponderance of the evidence" or the "greater weight of the evidence" refers to the quality and persuasiveness of the evidence, not to the number or quantity of witnesses and documents. In determining whether an issue has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties - that it is equally probable that one side is right as it is that the other side is right - then you must decide that issue against the party having the burden of proof. That is because the party bearing the burden of proof must prove more than a simple equality of evidence - he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with

-6-

this burden of proof - that what the party claims is more likely true than not true - then that element will have been proved by a preponderance of evidence.

## EVIDENCE – EXCLUDING ARGUMENT OF COUNSEL, COMMENT OF COURT AND IRRELEVANT MATTERS

As stated earlier, it is your duty to determine the facts, and in so doing, you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses, the stipulations and the exhibits admitted in the record.

Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you. Also, during the course of this trial, I occasionally made comments to the lawyers, or asked questions of a witness, or admonished a witness concerning the manner in which he or she should respond to the questions of counsel. Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

-8-

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench or by calling a recess.  The purpose of the conferences is to permit me to determine how we should proceed, and to avoid confusion and error.  You should not consider my granting or denying a request for a bench conference as any indication of my opinion of the case or any issue or what your verdict should be.

## EVIDENCE

While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case. You are also the judges of the weight to be given to any evidence. If you decide that certain evidence is believable, you must determine the importance of that evidence in the light of all other believable evidence in the case.

You may also consider either direct or circumstantial evidence. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness. "Circumstantial evidence" is proof of a chain of facts and circumstances which tends to prove a disputed fact. You may infer on the basis of reason, experience, and common sense from one established fact the existence or non-existence of some other fact.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It requires only that you weigh all of the evidence before determining what the facts are.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and the weight to be given that testimony. In making that decision, you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In determining the weight to be given any testimony, you may ask yourself whether there was evidence tending to prove that during the trial one or more witnesses may have testified falsely concerning some important fact; or, whether there was evidence that at some other time a witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial. You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and that may depend on whether it has to do with an important fact or with only an unimportant detail.

In deciding whether you believe or do not believe any witness, I suggest that you ask yourself a few questions: Did

-11-

the person impress you as one who was telling the truth?  Did he or she have any particular reason not to tell the truth?  Did he or she have a personal interest in the outcome of the case?  Did the witness seem to have a good memory?  Did the witness have the opportunity and ability to observe accurately the things he or she testified about?  Did he or she appear to understand the questions clearly and answer them directly?  Did the witness' testimony differ from the testimony of other witnesses?  In summary, you are the sole judges of the credibility of the testimony of any witness, and you may choose to believe all, part, or none of a witness' testimony.

You may find that a witness is interested in the outcome of this trial.  In deciding whether or not to believe such a witness, you may take the interest of the witness into account. If, after doing so, you believe the testimony of the witness, in whole or in part, you will treat what you believe the same as any other believable evidence.

As I have mentioned throughout the course of this trial, I will now give you instructions on specific types of evidence, and how that evidence may be considered by you during your deliberations.

-12-

## <u>ABSENCE OF EVIDENCE</u>

The law does not require any party to call as a witness every person who might have been present at any time or place involved in this case, or who may appear to have some knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

## LIMITED PURPOSE OF EVIDENCE

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider that evidence only for the limited purpose for which it was admitted and no other purpose.

During the trial, you heard evidence with respect to Colony insurance policies on properties other than the Evergreen 501 property. There are statements within the documents associated with those other policies that were made by individuals who are not parties to this litigation or are not witnesses called to testify during this trial. Those statements are hearsay. A hearsay statement cannot be considered for the truth of the matter asserted in the statement. However, as I previously instructed you, you may consider those statements contained in the other policies, and files related to those policies, for the limited purpose of determining what knowledge Colony had regarding the condition of another property, the actions of Colony in response to that knowledge, and whether those actions are probative of the materiality of any misrepresentation alleged in this case. Whether to believe any evidence, and what weight to give that evidence, is entirely a matter for you, the jury, to determine.

During the trial, you heard certain testimony by Charles Ammen about Randolph Bank Exhibit 31. The information contained

-14-

in that exhibit, and Mr. Ammen's testimony related to that exhibit, may be considered by you only for the purpose of determining the policy limits for building and business personal property as requested by Randolph Bank to the extent you find that testimony relevant.  You may not consider that exhibit and testimony for any other purpose.  For example, you may not consider that exhibit and testimony for the purpose of determining a value of the 501 Property and equipment at the time of the fire or for the purpose of determining any damages sustained by Mr. Peterson, Evergreen, or any other party to this case as a result of the fire at the 501 Property.

## DEMONSTRATIVE EXHIBITS

Certain exhibits were shown to you during the course of the trial which I identified as either demonstrative or illustrative exhibits.  These exhibits are used for convenience and to help explain, or illustrate, a witness' testimony or the facts of the case.  They are not themselves evidence or proof of any facts.

Case 1:10-cv-00581-WO-LPA   Document 247   Filed 10/17/12   Page 16 of 83

## DEPOSITION TESTIMONY

A deposition is a procedure by which the sworn testimony of a witness is taken before trial.  The witness is placed under oath to tell the truth and the lawyers for each party may then examine the witness.  You may consider the testimony of a witness given at a deposition in the same manner as if the witness had been present and testified during this trial.

Case 1:10-cv-00581-WO-LPA   Document 247   Filed 10/17/12   Page 17 of 83

## **INTERROGATORIES**

Evidence has been presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers in the same way as if they were made from the witness stand.

## STIPULATIONS

During the course of the trial, the parties have introduced certain facts by way of a stipulation.  A stipulation is an agreement by the parties that a fact or matter is true.  As to any fact or matter introduced by way of a stipulation, you should consider it as true even though no further evidence was presented on the matter or the fact.

## **AFFIDAVITS**

During the course of this trial, the parties have introduced the testimony of certain witnesses by way of affidavit. Those witnesses include Ken Palmer, Roy Yoder, and Charles Filholm. The parties have stipulated to this testimony, and you may consider the testimony offered in those affidavits as true just as though that witness had testified in this trial even though the witness was not called to testify.

## **EXPERT WITNESS**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses."  Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider the expert opinion received in evidence in this case, and give it such weight as you may think it deserves.  If you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

## AGENTS AND EMPLOYEES

Three of the parties in this case are corporations – Colony, Randolph Bank, and HPB Insurance.  Evergreen is an LLC, or limited liability company.  A corporation or an LLC (both of which are also referred to as "companies" in these instructions) may act only through natural persons as its agents or employees. In general, agents or employees of a corporation or an LLC may bind the company by their acts and declarations as long as they are made while acting within the scope of the authority delegated by the company or within the scope of their duties as employees of the company.

## PRIOR STATEMENT OF A PARTY TO THIS ACTION

Under some circumstances, a prior statement made by a party, whether consistent or inconsistent with that party's testimony, may be considered by you for the truth of the matter asserted in that statement.  This type of statement is often referred to as an "admission of a party opponent."

You may consider an out-of-court, unsworn statement by a party to this action for the truth of the matter asserted in that statement if you find that the statement was in fact made, that the statement is offered against that party, and that the statement is the party's own statement, either in an individual or a representative capacity.

Colony, Evergreen, HPB and Randolph Bank are companies rather than individuals.  In order for you to consider an alleged out-of-court statement of a party for the truth of the matter asserted, you must first find that any such statement is either (A) made by a person authorized to make a statement concerning the subject, or (B) the statement is made by the party's agent or servant concerning a matter within the scope of the employment made during the existence of the employment relationship. Further, I instruct you that the contents of any such statement may be considered but are not alone sufficient to establish the individual declarant's authority under (A) or the agency or employment relationship and scope thereof under (B).

-23-

Whether to believe or disbelieve any such statements, in whole or in part, and the weight to be assigned to any such statements or testimony is always a matter solely for the jury's consideration and determination.

Just as with all other evidence in this case, whether a party made an out-of-court statement and what may or may not have been said is always a matter solely for the jury to determine.

## IMPEACHMENT BY INCONSISTENT STATEMENTS

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you may distrust such witness' testimony in other matters and you may reject all of the testimony of that witness, or give it such credibility as you may think it deserves.

## INTRODUCTION TO CLAIM AND DEFENSE INSTRUCTIONS

To reach your verdict in this case, you will be called upon to answer a series of up to 18 questions – also called issues. Some of these issues may have subparts, or what I will refer to as questions in these instructions. Depending upon how you answer each of these issues, you may be required to proceed and answer other issues. I caution you that you should not interpret the fact that I will give instructions or submit issues about damages or alternate claims as any indication that I believe or have any opinion as to what your verdict should be. It will be up to you to answer the issues submitted in accordance with these instructions.

The first issues for your consideration, Issues 1-8, are those that arise from Colony's claims and any defenses thereto. Depending upon your responses to those issues, you will be directed to consider either damages under the policy of insurance or the issues arising from the cross-claims (Issues 9-13) and third-party claims (Issues 14-18). The fact that I instruct you as to all of these issues should not lead you to conclude that I have any opinion as to any of these issues or what your verdict should be. I will now proceed to give you specific instructions as to each of the issues you must determine to reach a verdict as to each of these claims and defenses.

-26-

As I stated just a moment ago, Issues 1-8 address Colony's claims and any defenses thereto.

## **ISSUE 1**

The first issue for your determination is as follows:

1.   Was a material misrepresentation made on the insurance application submitted to Colony with respect to any of the following matters:

>    a.   The power will remain on during vacancy at the 501 Building?
>
>    Answer: Yes _____   No _____
>
>    b.   The heat will remain on during vacancy at the 501 Building?
>
>    Answer: Yes _____   No _____
>
>    c.   The 501 Building having a Central Station Fire Alarm?
>
>    Answer: Yes _____   No _____
>
>    d.   The 501 Building being 100% sprinklered?
>
>    Answer: Yes _____   No _____

As to each of these questions a.-d., the burden of proof is on Colony to prove, by a preponderance of the evidence, the following facts:

First, that a statement or representation on the insurance application was made that was not true, and

Second, the statement or misrepresentation was also material.

-28-

The law provides that a representation in an application for a policy of insurance will entitle the insurance company to rescind the policy if it is false and material, even if the misrepresentation was innocent and unintentional. This means an insurance company is not bound by an insurance policy if material misrepresentations were made in the application. Furthermore, an insurance policy can be rescinded even if the actual cause of the loss is not related to the matter misrepresented.

A representation is false if it is untrue. However, the law does not require that a representation be literally true and accurate in every respect. A representation is not considered under the law to be false if it is substantially true.

In determining whether a representation is false, you may consider the nature of the question asked in the application. Questions are to be interpreted from the perspective of the ordinary reasonable person. The law imposes the duties of fair dealing and good faith in answering questions on an application. But it does not require that applicants have expert knowledge or skill to answer every question in such a way that the insurance company will have all the facts it might want to have.

A misrepresentation in an application for an insurance policy is deemed material if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the insurance company in making the insurance contract, or in

estimating the degree and character of the risk, or in fixing the rate premium.  In considering whether or not a misrepresentation was material, you may consider the testimony from an insurance company's underwriter, but like the testimony of any other witness, whether to believe or disbelieve that testimony, in whole or in part, and the weight to be assigned that testimony, is a matter solely for the jury to determine.

In this case, Colony contends the following markings on the Vacancy Supplement were material misrepresentations allowing it to rescind the Policy: circles drawn around "central station fire alarm," and "100% sprinklered," and check marks indicating power and heat would remain on in the building.  Mr. Peterson, Evergreen, and Randolph Bank have denied that these markings were material misrepresentations.

You must unanimously agree as to your verdict as to each of the four questions, a.-d., of Issue 1. If Colony has proved by a preponderance of the evidence that the representation you are then considering is both false and material then you must answer that question "Yes."  If Colony has not proved by a preponderance of the evidence that the representation you are then considering is both false and material, you must answer that question "No."

If you have answered any of the four questions (a.-d.) "Yes," you must proceed to Issue 2.  If you have answered all

four of the questions (a.-d.) "No," then you may skip Issue 2 and proceed to Issue 3.

## ISSUE 2

The second issue for your determination is as follows:

2.   As to any question under Issue 1 to which you have responded "Yes," was Randolph Bank responsible for making that representation in the application for the policy of insurance?

Answer:   Yes _____

No   _____

As to this Issue 2, the burden of proof is on Colony to prove, by a preponderance of the evidence, that Randolph Bank functioned as the actual applicant or was otherwise responsible for any material misrepresentation which you have found in response to Issue 1.

Colony contends that HPB and Mr. Clayton were acting as Randolph Bank's agent for the purposes of procuring insurance. Colony further contends that in determining whether Randolph Bank functioned as the actual applicant or was otherwise responsible for any material misrepresentation which you have found in response to Issue 1, you may consider Mr. Clayton and HPB's representations as agents of Randolph Bank.  In order for Randolph Bank to be responsible for any representations or statements by Mr. Clayton or HPB, the burden of proof is on Colony to prove, by a preponderance of the evidence, the following facts: (1) that Randolph Bank authorized Mr. Clayton and HPB to make statements or representations on its behalf in

-32-

procuring the policy of insurance; and (2) that Randolph Bank had control over Mr. Clayton and HPB with regard to the process of procuring the policy.

Regardless of how you answer Issue 2, you must proceed to consider and answer Issue 3.

## **ISSUE 3**

The third issue for your determination is as follows:

3.    Did Mr. Peterson or Evergreen breach one or more of the terms and conditions of the Fire Protective Safeguards Endorsement, thereby increasing the risk of loss, with respect to the following matters:

> a.    The 501 Building having an automatic sprinkler system?
>
> Answer: Yes _____    No _____
>
> b.    The 501 Building having utilities that remained on and functioning?
>
> Answer: Yes _____    No _____

As to each of these questions in this Issue 3, the burden of proof is on Colony to prove, by a preponderance of the evidence, both of the following facts:

First, that Mr. Peterson or Evergreen breached the contract of insurance by failing to adhere to the terms or condition you are then considering of the Fire Protective Safeguards Endorsement, and

Second, that this breach increased Colony's risk of loss under the insurance policy.

If risk has been increased resulting from a breach and loss occurs, no causal connection between the breach and the loss need be demonstrated.

-34-

An insurer will not be relieved of its obligation because of an immaterial or mere technical failure to comply with the policy provisions. The failure must be material and prejudicial.

The Fire Protective Safeguards Endorsement required three things: an automatic sprinkler system, fire extinguishers, and that all utilities remain on and functioning. In this case, Colony contends that the 501 Building did not maintain an automatic sprinkler system and that utilities were not "on" at the time of the May 18, 2010 fire. Mr. Peterson and Evergreen have acknowledged that the utilities were not "on" in the 501 Building.

If you should unanimously find that Colony has proved, by a preponderance of the evidence, that Mr. Peterson and Evergreen breached the terms of the Fire Protective Safeguards Endorsement as to the issue you are then considering, and that the breach increased the risk of loss, you must answer that issue "Yes." If Colony has not proved that breach by a preponderance of the evidence, or has not proved that breach increased the risk of loss, then you must answer that issue "No."

If you have answered each of the questions (a.-d.) in Issue 1 "No" and each of the questions (a.-b.) in Issue 3 "No," then you may skip Issues 4 and 5 and proceed to Issue 7. If you have answered one or more of the questions (a.-d.) in Issue 1 "Yes" or

if you have answered one or more of the questions (a.-b.) in
Issue 3 "Yes," then you must proceed to Issue 4.

## **ISSUE 4**

The fourth issue for your determination is as follows:

4.  Did Colony waive its alleged right to rescind or otherwise deny coverage under the insurance policy?

Answer:   Yes \_\_\_\_\_

No   \_\_\_\_\_

As to this issue, the burden of proof is on Mr. Peterson, Evergreen, and Randolph Bank to prove, by a preponderance of the evidence, that Colony waived its rights to enforce certain provisions in the insurance policy.  A waiver is an intentional relinquishment or abandonment of a known right or privilege. Waiver of a provision in an insurance policy requires proof of knowledge on the part of the insurer of the pertinent facts and conduct thereafter inconsistent with an intention to enforce the condition.

An insurance company is presumed to be cognizant of data in the official files of the company.  In this case, Mr. Peterson, Evergreen and Randolph Bank contend that Colony, by virtue of receiving its inspection report setting forth the conditions at the 501 Building and engaging in conduct thereafter inconsistent with an intention to enforce the condition(s), thereby waived its right to rescind the Policy based on the specific conditions revealed by the inspection report.  Colony contends that it did

-37-

not engage in any conduct inconsistent with an intention to enforce the condition(s).

If you should unanimously find that Mr. Peterson, Evergreen and Randolph Bank have proved, by a preponderance of the evidence, that Colony waived its right to rescind or otherwise deny coverage under the insurance policy, you must answer this issue "Yes." If Mr. Peterson, Evergreen and Randolph Bank have not proved that waiver by a preponderance of the evidence, then you must answer this issue "No."

Regardless of how you answer Issue 4, you must proceed to consider and answer Issue 5.

## **ISSUE 5**

The fifth issue for your determination is as follows:

5.  Is Colony estopped from rescinding or otherwise denying coverage under the insurance policy?

Answer:   Yes _____

No   _____

As to this defense, the burden of proof is on Mr. Peterson, Evergreen and Randolph Bank to prove, by a preponderance of the evidence, that Colony, by its acts, representations and admissions, or by its silence when it ought to have spoken out, intentionally or through culpable negligence, induced Mr. Peterson, Evergreen or Randolph Bank to believe certain facts exist and Mr. Peterson, Evergreen and Randolph Bank rightfully relied and acted on such belief, so that they will be prejudiced if Colony is permitted to deny the existence of such fact or facts.

In this case, Mr. Peterson, Evergreen and Randolph Bank contend that Colony, by not taking any action after the inspection report revealed the conditions of the 501 Building, led them to believe that the 501 Building and its contents were properly insured.  Mr. Peterson, Evergreen and Randolph Bank further contend that Colony should have informed them of the unacceptable conditions of the 501 Building so that they would have had the opportunity to cure any such unacceptable conditions

-39-

or obtain coverage from another insurance company before the May 18, 2010 fire.  Colony denies these allegations.

If you should unanimously find that Mr. Peterson, Evergreen and Randolph Bank have proved, by a preponderance of the evidence, that Colony is estopped from rescinding or otherwise denying coverage under the policy of insurance, then you must answer this issue "Yes."  If Mr. Peterson, Evergreen and Randolph Bank have not proved estoppel by a preponderance of the evidence, then you must answer this issue "No."

If you have answered Issue 4, or Issue 5, or both Issues 4 and 5 "Yes," proceed to Issue 7.

If you have answered Issue 4 "No" and Issue 5 "No," proceed to Issue 6.

## ISSUE 6

The sixth issue for your determination is as follows:

6. Did Randolph Bank, as mortgagee, know of a substantial change in risk as to the Fire Protective Safeguards Endorsement associated with Evergreen and Mr. Peterson's Policy, and fail to notify Colony of that change in risk?

Answer:　Yes _____

No _____

As to this issue, the burden of proof is on Colony to prove, by a preponderance of the evidence, that Randolph Bank knew of a substantial change in the risk associated with the Policy, but that Randolph Bank did not notify Colony of that fact.

The law gives Randolph Bank protected status as a mortgageholder. Even if the Policy is rescinded or otherwise invalidated by an act or omission of Evergreen or Mr. Peterson, Randolph Bank can generally still collect under the Policy for losses to the building. However, Randolph Bank benefits from its protected status only if it lacked knowledge of the circumstances giving rise to the Policy's invalidation. If Randolph Bank knew of any substantial change in the risk associated with the policy, they were required to notify Colony of that change in risk. If they failed to notify Colony in spite of that knowledge, they lose their protected status under the mortgageholders clause, and

-41-

are no longer able to collect in the event the Policy is invalidated.

If you should unanimously find that Colony has proved, by a preponderance of the evidence, that Randolph Bank, as mortgagee, knew of a substantial change as to the Fire Protective Safeguards Endorsement associated with Evergreen and Mr. Peterson's policy, and failed to notify Colony of that change in risk, then you must answer this issue "Yes." If Colony has failed to prove, by a preponderance of the evidence, that Randolph Bank, as mortgagee, knew of a substantial change in risk as to the Fire Protective Safeguards Endorsement associated with Evergreen and Mr. Peterson's policy, or if Colony has failed to prove that Randolph Bank failed to notify Colony of that substantial change in risk, then you must answer this issue "No."

If either Issue 2 or Issue 6 (or both) is "Yes," then go to Issue "9." If both Issue 2 and Issue 6 are "No," go to Issue 8.

If you did not reach Issue 2, and Issue 6 is "No," go to Issue 8.

## ISSUE 7

The seventh issue for your determination is as follows:

7.  What amount, if any, are Mr. Peterson, Evergreen, and Randolph Bank entitled to recover as damages under the policy of insurance issued by Colony?

  A.  Building: _____

  B.  Business Personal Property (excluding the Entek Extruder): _____

  C.  Entek Extruder:

    1.  Permanently Installed?

      Yes: _____   No: _____

    2.  Amount of damages, if any: _____

If you have reached your verdict as to Issues 1-5 and, as a result of your verdict as to those Issues, you are now proceeding to consider this Issue 7, then I instruct you that you must consider and answer this Issue 7.

Mr. Peterson, Evergreen and Randolph Bank have asserted separate counterclaims as to Colony. They contend that Colony has breached the contract of insurance by failing to pay damages for the fire loss as required by the terms of the policy.

Your verdict as to Issues 1-5 establishes whether the contract of insurance may be rescinded by Colony and whether or not Mr. Peterson, Evergreen and Randolph Bank breached the terms of the contract of insurance. If you, the jury, have followed my

-43-

instructions and reached this Issue 7 for consideration, then the contract and a breach of that contract have been established. The only issue for your determination is the following:

7.  What amount, if any, are Mr. Peterson, Evergreen, and Randolph Bank entitled to recover as damages under the policy of insurance issued by Colony?

The burden of proof is on Mr. Peterson, Evergreen, and Randolph Bank to prove, by a preponderance of the evidence, any damages sustained as a result of the fire and that were covered by the policy of insurance.  The policy of insurance provides that it will pay for loss or damage to "Covered Property" caused by or resulting from any "Covered Cause of Loss."  "Covered Property" means first, the 501 Building, which includes "permanently installed machinery and equipment," and second, Business Personal Property located in or on the 501 Building, including furniture and fixtures, stock, and other personal property, and machinery and equipment that are not "permanently installed."

The policy of insurance provides up to $1,000,000 for damages to the 501 Building and up to $3,500,000 for damages to Business Personal Property.  The policy of insurance includes a deductible of $10,000.

In order to determine damages, you must first determine what property is covered under the policy of insurance.  In this case,

-44-

Colony contends that Evergreen's machinery and equipment is "permanently installed" within the meaning of the insurance policy and is therefore insured by the $1,000,000 coverage limit for the 501 Building.  Mr. Peterson, Evergreen and Randolph Bank contend that Evergreen's machinery and equipment are not "permanently installed" as that term is used by the Policy, but rather are insured by the $3,500,000 coverage limit for the Business Personal Property.

The policy of insurance does not specifically state which machinery and equipment is "permanently installed."  It is therefore up to you to determine what was intended by the language of the policy of insurance, and whether the machinery and equipment were "permanently installed" within the meaning of the policy of insurance.  This phrase must be construed according to the terms of the policy of insurance, those terms given their reasonable and ordinary meaning, and the intent of the parties to the contract.  In determining the meaning of the terms of the policy of insurance, when an insurance term is ambiguous and reasonably susceptible to more than one interpretation, the ambiguity must be resolved against the insurer and in favor of the insured.

Once you have determined what property is covered under the policy of insurance as to the coverage for the Building or the Business Personal Property, you must then determine damages.

-45-

Under the policy of insurance, Colony is required to pay the actual cash value of the damaged or destroyed property. Therefore, any damages sustained by Mr. Peterson, Evergreen and Randolph Bank are to be determined based upon their "actual cash value" as defined in the contract of insurance. Actual Cash Value is defined in the policy of insurance as the lesser of the following:

a. Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of the loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial damage or total loss damage.

b. When the loss or damage to Covered Property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed Covered Property, if reasonably available on the used market.

c. Otherwise, actual cash value means the market value of new, identical, or nearly identical property less reasonable deduction for wear and tear, deterioration, and obsolescence.

Mr. Peterson, Evergreen and Randolph Bank bear the burden of proving damages in a manner that will allow you to calculate the

-46-

amount of damages to a reasonable certainty.  However, proof to an absolute mathematical certainty is not required.

You should reduce the amount of damages awarded for the Building by the amount of $10,000 (the deductible) and then write that figure on the appropriate line.  Do not reduce any other award of damages by application of the deductible.

You must determine these issues as to the Entek Extruder separately.  That is, you must first determine whether the Entek Extruder was permanently installed; you must then determine the actual cash value of the loss or damage, if any, to the Entek Extruder.

If you have reached this Issue 7 for consideration and reached a verdict as to each of Issues 1-5, as required, and this Issue 7 as required by these instructions, then you have concluded your deliberations and may return to the courtroom.

## ISSUE 8

The eighth issue for your determination is as follows:

8.    What amount, if any, is Randolph Bank, as mortgagee, entitled to recover as damages for any Building loss as a result of the fire?

Amount:    Building   _____

The burden of proof is on Randolph Bank, as mortgagee, to prove, by a preponderance of the evidence, any damages sustained as a result of the fire and that were covered by the policy of insurance.  The policy of insurance provides that it will pay for losses sustained and that those losses are to be determined based upon their "actual cash value" as defined in the contract of insurance.  As a mortgagee, Randolph Bank is only entitled to recover damages, if any, that were proximately caused by the loss to the building with a policy amount of $1,000,000.  Randolph Bank is not entitled, as mortgagee, to recover losses insured under the Business Personal Property coverage.  Randolph Bank, as mortgagee, is not entitled to recover any damages for loss to Business Personal Property not permanently installed.

In determining your verdict as to this Issue 8, you must first determine whether any machinery and equipment was "permanently installed" within the meaning of the policy of insurance such that it is insured under the 501 Building coverage.

-48-

The policy of insurance does not specifically state which machinery and equipment is "permanently installed." It is therefore up to you to determine what was intended by the language of the policy of insurance, and whether the machinery and equipment were "permanently installed" within the meaning of the policy of insurance. This phrase must be construed according to the terms of the policy of insurance, those terms given their reasonable and ordinary meaning, and the intent of the parties to the contract. In determining the meaning of the terms of the policy of insurance, when an insurance term is ambiguous and reasonably susceptible to more than one interpretation, the ambiguity must be resolved against the insurer and in favor of the insured.

Once you have determined what property is covered under the policy of insurance as to the coverage for the 501 Building only, you must then determine damages. Under the policy of insurance, Colony is only required to pay the actual cash value of the damaged or destroyed 501 Building, and any machinery and equipment which you find was permanently installed within the meaning of the policy of insurance. Any damages sustained by Randolph Bank, as mortgagee, are to be determined based upon their "actual cash value" as defined in the contract of insurance. Actual Cash Value is defined in the policy of insurance as the lesser of the following:

-49-

a.   Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of the loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial damage or total loss damage.

b.   When the loss or damage to Covered Property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed Covered Property, if reasonably available on the used market.

c.   Otherwise, actual cash value means the market value of new, identical, or nearly identical property less reasonable deduction for wear and tear, deterioration, and obsolescence.

Randolph Bank, as mortgagee, bears the burden of proving damages in a manner that will allow you to calculate the amount of damages to a reasonable certainty.  However, proof to an absolute mathematical certainty is not required.

You should reduce the amount of damages awarded for the Building by the amount of $10,000 (the deductible) and then write that figure on the appropriate line.  Do not reduce any other award of damages by application of the deductible.

Regardless of your verdict as to Issue 8, you should proceed to Issue 9.

-50-

## ISSUES 9-13
## INTRODUCTION

If, after following my instructions, you have reached Issue 9 for deliberation, then you have found that Mr. Peterson and Evergreen are not entitled to recover damages from Colony under the contract of insurance for any loss caused by a fire at the 501 Property.  As I told you earlier in this case, Mr. Peterson and Evergreen have asserted crossclaims against Randolph Bank for negligence and breach of fiduciary duty.  That is, Mr. Peterson and Evergreen contend that if any losses as a result of the fire are not covered by a policy of insurance, then Mr. Peterson and Evergreen are entitled to recover damages from Randolph Bank for negligence or breach of fiduciary duty.  Mr. Peterson and Evergreen contend that Randolph Bank was negligent in procuring fire insurance coverage for the 501 Property.  Randolph Bank denies these allegations, and also asserts that Mr. Peterson and Evergreen were contributorily negligent.

Mr. Peterson and Evergreen also contend that Randolph Bank breached a fiduciary duty that it owed to each of them.  Randolph Bank denies this claim, and further asserts the defense of estoppel.  I will now proceed to give you instructions on these issues, that is, Issues 9-13, which all relate to Mr. Peterson and Evergreen's claims against Randolph Bank.

-51-

## ISSUE 9

The ninth issue for your determination is as follows:

9.   Were Mr. Peterson and Evergreen damaged by the negligence of Randolph Bank?

Answer:   Yes _____

No  _____

As to this issue, the burden of proof is on Mr. Peterson and Evergreen to prove, by a preponderance of the evidence, the following facts:

First, that Randolph Bank undertook to procure property insurance for Mr. Peterson and Evergreen;

Second, that Randolph Bank failed to use reasonable care to procure the insurance; and

Third, that Mr. Peterson and Evergreen suffered damages as a proximate result of Randolph Bank's failure to procure the insurance.

The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm.  Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself from damage.  A person's failure to use ordinary care is negligence.

Mr. Peterson and Evergreen have not only the burden of proving negligence, but also that such negligence was a proximate

-52-

cause of the damage.  Proximate cause is a cause which in a natural and continuous sequence produces a person's damage, and is a cause which a reasonable and prudent person could have foreseen would probably produce such damage or some similar injurious result.  There may be more than one proximate cause of damage.  Therefore, Mr. Peterson and Evergreen need not prove that Randolph Bank's negligence was the sole proximate cause of the damage.  Mr. Peterson and Evergreen must prove, by the greater weight of the evidence, only that the defendant's negligence was a proximate cause.

Evergreen and Mr. Peterson contend that Randolph Bank was negligent in one or more of the following ways:

(A)  Submitting inaccurate or incomplete information regarding the building to Edward Clayton and HPB Insurance Group, Inc.;

(B)  Failing to review or consider information and documentation prepared or submitted by Mr. Clayton as part of the application process;

(C)  Failing to request Mr. Peterson or Evergreen to review or confirm the information submitted as part of the application process;

(D)  Failing to review the policy and its terms upon receipt;

(E)   Failing to provide Evergreen or Mr. Peterson with a copy of the policy of insurance; and

(F)   Failing to procure property insurance that would secure and protect the interests of Evergreen and Mr. Peterson in the building and contents thereof.

Randolph Bank denies each of these allegations.

As to this issue, on which Evergreen and Mr. Peterson have the burden of proof, if you find, by the greater weight of the evidence, that Randolph Bank undertook to procure property insurance for Evergreen and Mr. Peterson, and that Randolph Bank failed to use reasonable care to procure such insurance, and that Evergreen and Mr. Peterson suffered damages as a proximate result of Randolph Bank's failure to procure insurance for them, then it would be your duty to answer this issue "Yes" in favor of Evergreen and Mr. Peterson, and next go to Issue 10.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Randolph Bank, and next go to Issue 11.

## ISSUE 10

The tenth issue for your determination is as follows:

10.  Did Evergreen and Mr. Peterson, by their own negligence, contribute to their damage?

Answer:  Yes _____

No  _____

You will answer this issue only if you have answered Issue 9 with a "Yes" in favor of Evergreen and Mr. Peterson as to the negligence of Randolph Bank.

On this issue, the burden of proof is on Randolph Bank. This means that Randolph Bank must prove, by the greater weight of the evidence, the following facts:

First, that Evergreen and Mr. Peterson were negligent, and

Second, that such negligence was a proximate cause of Plaintiff's own damage.

The test of what is negligence is the same for Evergreen and Mr. Peterson as for Randolph Bank.  Negligence refers to a person's failure to follow a duty of conduct imposed by law. Every person is under a duty to use ordinary care to protect himself and others from damage.  Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself from damage.  A person's failure to use ordinary care is negligence.  If Mr. Peterson and Evergreen's negligence joins with the negligence of

-55-

Randolph Bank in proximately causing Mr. Peterson and Evergreen's own damage, it is called contributory negligence, and Mr. Peterson and Evergreen cannot recover.

Randolph Bank contends that Mr. Peterson and Evergreen were contributorily negligent in the following ways:

(A)  Submitting inaccurate, incomplete, or incorrect information regarding the building and contents therein to Mr. Clayton and HPB;

(B)  Failing to review or consider information and documentation prepared or submitted by Mr. Clayton to insurance agency HPB as part of the insurance application process;

(C)  Failing to request Randolph Bank to review or confirm the information submitted by Mr. Clayton and HPB to Burns and Wilcox as part of the insurance application process;

(D)  Failing to request a copy of the policy of insurance soon after its issuance by Colony Insurance Company; and

(E)  Failing to procure property insurance that would secure and protect the interests of Evergreen, Mr. Peterson and Randolph Bank in the building and contents therein.

Mr. Peterson and Evergreen deny these allegations.

As to this issue of contributory negligence, on which Randolph Bank has the burden of proof, if you find, by the greater weight of the evidence, that Evergreen and Mr. Peterson were negligent in any one or more of the ways contended by

-56-

Randolph Bank and that such negligence was a proximate cause of Evergreen or Mr. Peterson's own damage, then it would be your duty to answer this issue "Yes" in favor of Randolph Bank. If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Evergreen and Mr. Peterson.

Regardless of how you have answered this Issue 10, proceed to Issue 11.

## ISSUE 11

The eleventh issue for your determination is as follows:

11.  Were Evergreen and Mr. Peterson damaged by a breach of fiduciary duty by Randolph Bank?

Answer:   Yes  _____

No  _____

On this issue, the burden of proof is on Mr. Peterson and Evergreen to prove, by a preponderance of the evidence, the following facts:

First, that Randolph Bank was Evergreen and Mr. Peterson's fiduciary;

Second, that Randolph Bank failed to discharge its fiduciary duties to Evergreen and Mr. Peterson; and

Third, that such failure was a proximate cause of Evergreen and Mr. Peterson's damage.

A fiduciary is a person in whom another person has placed special faith, confidence, and trust.  Because of the trust and confidence placed in him by another person, a fiduciary is required to act honestly, in good faith, and in the best interests of that person.

A fiduciary relationship may exist in a variety of circumstances.  Any time one person places special faith, confidence and trust in another person to represent his best

-58-

interests, a fiduciary relationship exists.  It is not necessary that it be a technical or legal relationship.

An ordinary debtor-creditor relationship alone generally does not give rise to a fiduciary relationship, nor do parties to a contract necessarily enter into a fiduciary relationship with one another.  However, that does not mean that such relationships cannot be fiduciary relationships.  In order for parties to a contract to also have a fiduciary relationship, there must be confidences and duties shared between the parties beyond the terms of the contract itself.

In this case, Mr. Peterson and Evergreen contend that Randolph Bank breached its fiduciary duties by:

(A)  Submitting inaccurate or incomplete information regarding the building to Mr. Clayton and HPB Insurance Group, Inc.;

(B)  Failing to review or consider information and documentation prepared or submitted by Mr. Clayton as part of the application process;

(C)  Failing to request Mr. Peterson or Evergreen to review or confirm the information submitted as part of the application process;

(D)  Failing to review the policy and its terms upon receipt;

-59-

(E)  Failing to provide Evergreen or Mr. Peterson with a copy of the policy of insurance; and

(F)  Failing to procure property insurance that would secure and protect the interests of Evergreen and Mr. Peterson in the building.

Randolph Bank denies these allegations.

As to this issue, on which Evergreen and Mr. Peterson have the burden of proof, if you find, by the greater weight of the evidence, that Randolph Bank acted as Evergreen and Mr. Peterson's fiduciary in procuring the Policy, that Randolph Bank breached its fiduciary duty by failing to act honestly, in good faith, or in the best interests of Evergreen and Mr. Peterson, and that Evergreen and Mr. Peterson suffered damage as a result of Randolph Bank's breach, then it would be your duty to answer this issue "Yes" in favor of Evergreen and Mr. Peterson.  If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Randolph Bank.

If you have answered this Issue 11 "Yes," then proceed to Issue 12.  If you have answered this Issue 11 "No," then:

(a) if you have answered Issue 9 "Yes" and Issue 10 "No," proceed to Issue 13; or

(b) If you have answered Issue 9 "No," proceed to Issue 14.

-60-

## ISSUE 12

The twelfth issue for your determination is as follows:

12.  Are Mr. Peterson and Evergreen estopped from claiming a breach of fiduciary duty by Randolph Bank?

Answer:   Yes _____

No _____

As to this defense, the burden of proof is on Randolph Bank to prove, by a preponderance of the evidence, that Mr. Peterson or Evergreen, or both, by their acts, representations and admissions, or by their silence when they ought to have spoken out, intentionally or through culpable negligence, induced Randolph Bank to believe certain facts exist and Randolph Bank rightfully relied and acted on such belief, so that they will be prejudiced if Mr. Peterson and Evergreen are permitted to deny the existence of such fact or facts.

Randolph Bank contends that Mr. Peterson and Evergreen led them to believe that the power would be on in the 501 Building and that the conditions of insurance would be met. Mr. Peterson and Evergreen deny these allegations.

If you have answered this Issue "Yes," then:

(a) If you have answered Issue 9 "Yes" and Issue 10 "No," proceed to Issue 13;

(b) If you have answered Issue 9 "No," proceed to Issue 14; or

-61-

(c) If you have answered Issue 9 "Yes," and Issue 10 "Yes," proceed to Issue 14.

If you have answered this Issue "No," proceed to Issue 13.

## ISSUE 13

The thirteenth issue for your determination is as follows:

13.   What amount of damages, if any, are Evergreen and Mr. Peterson entitled to recover for any negligence or breach of fiduciary duty by Randolph Bank?

Amount:   _____

Mr. Peterson and Evergreen do not contend any negligence or breach of fiduciary duty has caused separate harm.  Instead, Mr. Peterson and Evergreen contend any wrongful conduct by Randolph Bank proximately caused the same harm, or damage.

On this issue, the burden of proof is on Mr. Peterson and Evergreen to prove, by a preponderance of the evidence, the amount of actual damages proximately caused by the wrongful conduct of Randolph Bank, whether through negligence, breach of fiduciary duty, or both.  In this instruction as to Issue 13, the term "wrongful conduct" is used to refer to either negligence, breach of fiduciary duty, or both, as to Randolph Bank as you have found in accordance with your responses to Issues 8-13.

As I have already explained to you, proximate cause is a cause which in a natural and continuous sequence produces a person's damage, and is a cause which a reasonable and prudent person could have foreseen would probably produce such damage or some similar injurious result.

-63-

Mr. Peterson and Evergreen contend that the wrongful conduct of Randolph Bank proximately caused damage, if any, because of the loss of insurance coverage through Colony on the 501 Property, both real and personal. Thus, in determining damages, you may award such amounts, if any, as you find would have been recovered if a valid policy of insurance existed on the property at the time of the fire. In determining the amount of any damages, you should apply the instructions which I have previously given as to Issue 7. You may also consider, and award such damages as Mr. Peterson and Evergreen have proved, by a preponderance of the evidence, were proximately caused by the wrongful conduct of Randolph Bank including, if you so find, any expenses associated with loans that would have been paid had insurance been in place.

Finally, as to this issue on which Evergreen and Mr. Peterson have the burden of proof, if you find by the greater weight of the evidence the amount of actual damages proximately caused by the negligence of Randolph Bank, then it would be your duty to write that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to write a nominal sum such as "One Dollar" in the blank space provided.

Proceed to Issue 14.

-64-

## ISSUES 14-18
### INTRODUCTION

In this case, as I advised you earlier, Mr. Peterson and Evergreen have also asserted third-party claims against Mr. Clayton and HPB.  That is, Mr. Peterson and Evergreen contend that if any losses as a result of the fire are not covered by a policy of insurance, then Mr. Peterson and Evergreen are entitled to recover damages from Mr. Clayton and HPB for negligence or breach of fiduciary duty.  Mr. Peterson and Evergreen contend that Mr. Clayton and HPB were negligent in procuring fire insurance coverage for the commercial property in Georgia.  Mr. Clayton and HPB deny these allegations, and also assert that Mr. Peterson and Evergreen were contributorily negligent.

Mr. Peterson and Evergreen also contend that Mr. Clayton and HPB breached a fiduciary duty that it owed to each of them.  Mr. Clayton and HPB deny this claim, and further assert the defense of estoppel.  I will now proceed to give you instructions on these issues, that is, Issues 14-18, which all relate to Mr. Peterson and Evergreen's claims against Mr. Clayton and HPB.

## ISSUE 14

The fourteenth issue for your determination is as follows:

14.  Were Mr. Peterson and Evergreen damaged by the negligence of Mr. Clayton and HPB?

> Answer:  Yes _____
>
> No  _____

As to this issue, the burden of proof is on Mr. Peterson and Evergreen to prove, by a preponderance of the evidence, the following facts:

First, that Mr. Clayton and HPB undertook to procure property insurance for Evergreen and Mr. Peterson;

Second, that Mr. Clayton and HPB failed to use reasonable care to procure the insurance; and

Third, were Mr. Peterson and Evergreen damaged by the negligence of Randolph Bank.

Evidence that an agent took an application from a customer is sufficient to support a duty to procure insurance.  If an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable skill, care and diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so.

In this case, Mr. Peterson and Evergreen contend, and Mr. Clayton and HPB Insurance deny, that Mr. Clayton and HPB

-66-

Insurance failed to use reasonable care in one or more of the following ways:

(A)  Providing incomplete or inaccurate insurance policy application information to the insurance broker;

(B)  Failing to consider the Fire Protection Systems Inspection Report provided by Mr. Peterson to Mr. Clayton and HPB Insurance;

(C)  Failing to send the Fire Protection Systems Inspection Report to Colony's broker;

(D)  Failing to provide Mr. Peterson and Evergreen with a copy of the insurance policy upon receipt or the copies of the application documentation; and

(E)  Failing to procure insurance that would secure and protect the interests of Mr. Peterson and Evergreen involving the subject property.

Mr. Peterson and Evergreen further contend, and Mr. Clayton and HPB Insurance deny, that the alleged negligence was a proximate cause of Mr. Peterson and Evergreen's damage.

I instruct you that negligence is not to be presumed from the mere fact of damage.

The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm.  Ordinary care means that degree of care which a reasonable and prudent person would use under the

-67-

same or similar circumstances to protect himself from damage. A
person's failure to use ordinary care is negligence.

Mr. Peterson and Evergreen not only have the burden of
proving negligence, but also that such negligence was a proximate
cause of the damage. Proximate cause is a cause which in a
natural and continuous sequence produces a person's damage, and
is a cause which a reasonable and prudent person could have
foreseen would probably produce such damage or some similar
injurious result. There may be more than one proximate cause of
damage. Therefore, Evergreen and Mr. Peterson need not prove
that Randolph Bank's negligence was the sole proximate cause of
the damage. Evergreen and Mr. Peterson must prove, by the
greater weight of the evidence, only that the defendant's
negligence was a proximate cause.

As to this issue, on which Evergreen and Mr. Peterson have
the burden of proof, if you find, by the greater weight of the
evidence, that Mr. Clayton and HPB undertook to procure property
insurance for Evergreen and Mr. Peterson, and that Mr. Clayton
and HPB failed to use reasonable care to procure such insurance,
and that Evergreen and Mr. Peterson suffered damages as a
proximate result of Randolph Bank's failure to procure insurance
for them, then it would be your duty to answer this issue "Yes"
in favor of Evergreen and Mr. Peterson. If, on the other hand,

you fail to so find, then it would be your duty to answer this issue "No" in favor of Mr. Clayton and HPB.

If you have answered this issue "Yes," proceed to Issue 15. If you have answered this Issue "No," then proceed to Issue 16.

## ISSUE 15

The fifteenth issue for your determination is as follows:

15.  Did Evergreen and Mr. Peterson, by their own negligence, contribute to their damage?

Answer:  Yes _____

No  _____

You will answer this issue only if you have answered Issue 14 with a "Yes" in favor of Evergreen and Mr. Peterson as to the negligence of Mr. Clayton and HPB.

On this issue, the burden of proof is on Mr. Clayton and HPB to prove, by the greater weight of the evidence, the following facts:

First, that Evergreen and Mr. Peterson were negligent, and

Second, that such negligence was a proximate cause of Evergreen and Mr. Peterson's own damage.

On this issue, the burden of proof is on Mr. Clayton and HPB Insurance. This means that Mr. Clayton and HPB Insurance must prove, by the greater weight of the evidence, that Mr. Peterson or Evergreen was negligent and that such negligence was a proximate cause of Mr. Peterson and Evergreen's own damage.

The test of what is negligence, as I have already defined and explained it, is the same for the plaintiff as for the defendant. If the plaintiff's negligence joins with the negligence of the defendant in proximately causing the

-70-

plaintiff's own damage, it is called contributory negligence, and the plaintiff cannot recover.

In this case, Mr. Clayton and HPB Insurance contend, and Mr. Peterson and Evergreen deny, that Mr. Peterson and Evergreen were negligent in one or more of the following ways:

(A)  Failing to provide complete and accurate information in the insurance application process as specifically requested in the Acord and Specialty Property Vacant Supplement;

(B)  Reviewing the Commercial Insurance Application, signing the Acord, failing to identify any allegedly incomplete or inaccurate information contained in the Acord and failing to advise Mr. Clayton and HPB Insurance of any alleged incomplete or inaccurate information contained thereon;

(C)  Reviewing the Specialty Property Vacant Supplement, failing to identify any allegedly incomplete or inaccurate information contained in the Specialty Property Vacant Supplement and failing to advise Mr. Clayton and HPB Insurance of any alleged incomplete or inaccurate information contained thereon;

(D)  Failing to review, or request to review, the insurance application documentation; and

(E)  Failing to review the insurance policy delivered to Randolph Bank.

Mr. Clayton and HPB Insurance further contend, and Mr. Peterson and Evergreen deny, that Mr. Peterson and Evergreen's

-71-

negligence was a proximate cause of and contributed to Mr.
Peterson and Evergreen's damage.

Finally, as to this fifteenth issue, contributory
negligence, on which Mr. Clayton and HPB Insurance have the
burden of proof, if you find, by the greater weight of the
evidence, that Mr. Peterson or Evergreen was negligent and that
such negligence was a proximate cause of Mr. Peterson and
Evergreen's own damage, then it would be your duty to answer this
issue "Yes," in favor of Mr. Clayton and HPB Insurance.

If, on the other hand, you fail to so find, then it would be
your duty to answer this issue "No" in favor of Mr. Peterson and
Evergreen.

Regardless of how you have answered this Issue, you must
proceed to Issue 16.

## ISSUE 16

The sixteenth issue for your determination is as follows:

16.  Were Evergreen and Mr. Peterson damaged by a breach of fiduciary duty by Mr. Clayton and HPB Insurance?

> Answer:   Yes  _____
>
> No  _____

On this issue, the burden of proof is on Mr. Peterson and Evergreen to prove, by a preponderance of the evidence, the following facts:

First, that Mr. Clayton and HPB were Evergreen and Mr. Peterson's fiduciary;

Second, that Mr. Clayton and HPB failed to discharge their fiduciary duties to Evergreen and Mr. Peterson; and

Third, that such failure was a proximate cause of Evergreen and Mr. Peterson's damage.

A fiduciary is a person in whom another person has placed special faith, confidence and trust. Because of the trust and confidence placed in him by another person, a fiduciary is required to act honestly, in good faith and in the best interests of that person.

A fiduciary relationship may exist in a variety of circumstances.  Any time one person places special faith, confidence and trust in another person to represent his best interests, a fiduciary relationship exists.  It is not necessary

-73-

that it be a technical or legal relationship.  An insurance agent acts as a fiduciary with respect to procuring insurance for an insured, correctly naming the insured in the policy, and correctly advising the insured about the nature and extent of his coverage.

Mr. Peterson and Evergreen contend, and Mr. Clayton and HPB deny, that Mr. Clayton and HPB breached fiduciary duties owed to Mr. Peterson and Evergreen in the following respects:

(A)  Failing to review or consider information and documentation provided by Peterson;

(B)  Submitting inaccurate or incomplete information regarding the building as part of the application process;

(C)  Failing to request Mr. Peterson or Evergreen to review or confirm the information submitted as part of the application process;

(D)  Failing to provide Evergreen or Mr. Peterson with a copy of the policy of insurance; and

(E)  Failing to procure property insurance that would secure and protect the interests of Evergreen and Mr. Peterson in the building.

As to this issue, on which Evergreen and Mr. Peterson have the burden of proof, if you find, by the greater weight of the evidence, that Mr. Clayton and HPB acted as Evergreen and Mr. Peterson's fiduciary in procuring the Policy, that Mr. Clayton

-74-

and HPB breached their fiduciary duty by failing to act honestly, in good faith, or in the best interests of Evergreen and Mr. Peterson, and that Evergreen and Mr. Peterson suffered damage as a result of Mr. Clayton and HPB's breach, then it would be your duty to answer this issue "Yes" in favor of Evergreen and Mr. Peterson.  If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Mr. Clayton and HPB.

If you have answered this Issue 16 "Yes," then proceed to Issue 17.

If you have answered this Issue 16 "No," and you have answered Issue 14 "Yes," and you have answered Issue 15 "No," then proceed to Issue 18.

If you have answered this Issue 16 "No," and you have answered Issue 14 "No," and you have answered all of the required Issues, you have concluded your deliberations and you may return to the courtroom.

If you have answered this Issue 16 "No," and you have answered both Issue 14 and Issue 15 "Yes," and you have answered all of the required Issues, you have concluded your deliberations and you may return to the courtroom.

## ISSUE 17

The seventeenth issue for your determination is as follows:

17.  Are Mr. Peterson and Evergreen estopped from claiming a breach of fiduciary duty by Mr. Clayton and HPB?

Answer:  Yes  _____

No  _____

As to this defense, the burden of proof is on Mr. Clayton and HPB to prove, by a preponderance of the evidence, that Mr. Peterson or Evergreen, or both, by their acts, representations and admissions, or by their silence when it ought to have spoken out, intentionally or through culpable negligence, induced Mr. Clayton to believe certain facts exist and Mr. Clayton and HPB rightfully relied and acted on such belief, so that they will be prejudiced if Mr. Peterson and Evergreen are permitted to deny the existence of such fact or facts.

In this case, Mr. Clayton and HPB contend that Mr. Peterson and Evergreen led them to believe that the power and gas were on in the 501 Building, that the 501 Building had a central station fire alarm, that the 501 Building was 100% sprinklered, and that the conditions of insurance would be met.  Mr. Peterson and Evergreen deny these allegations.

If you have answered Issue 17 "No," proceed to Issue 18. If you have answered Issue 17 "Yes," then:

-76-

(a) If you have answered Issue 14 "Yes" and Issue 15 "No," you must proceed to Issue 18; or

(b) If you have answered Issue 14 "No" or you have answered Issue 15 "Yes," then you have completed your deliberations and you may return to the courtroom.

The eighteenth issue for your determination is as follows:

18.   What amount of damages, if any, are Evergreen and Mr.
Peterson entitled to recover for any negligence or breach of
fiduciary duty by Mr. Clayton and HPB?

          Amount:  _____

Mr. Peterson and Evergreen do not contend any negligence or
breach of fiduciary duty by Mr. Clayton and HPB have caused
separate harm.   Instead, Mr. Peterson and Evergreen contend any
wrongful conduct by Mr. Clayton and HPB proximately caused the
same harm, or damage.

On this issue, the burden of proof is on Mr. Peterson and
Evergreen to prove, by a preponderance of the evidence, the
amount of actual damages proximately caused by the wrongful
conduct of Mr. Clayton and HPB, whether through negligence,
breach of fiduciary duty, or both.   In this instruction as to
Issue 8, the term "wrongful conduct" is used to refer to either
negligence, breach of fiduciary duty, or both, as to Mr. Clayton
and HPB Bank as you have found in accordance with your responses
to Issues 14-17.

As I have already explained to you, proximate cause is a
cause which in a natural and continuous sequence produces a
person's damage, and is a cause which a reasonable and prudent

-78-

person could have foreseen would probably produce such damage or some similar injurious result.

Mr. Peterson and Evergreen contend that the wrongful conduct of Mr. Clayton and HPB proximately caused damage, if any, because of the loss of insurance coverage through Colony on the 501 Property, both real and personal. Thus, in determining damages, you may award such amounts, if any, as you find would have been recovered if a valid policy of insurance existed on the property at the time of the fire. In determining the amount of any damages, you should apply the instructions which I have previously given as to Issue 6. You may also consider and award such damages as Mr. Peterson and Evergreen have proved, by a preponderance of the evidence, were proximately caused by the wrongful conduct of Mr. Clayton and HPB including, if you so find, any expenses associated with loans that would have been paid had insurance been in place.

Finally, as to this issue on which Evergreen and Mr. Peterson have the burden of proof, if you find by the greater weight of the evidence the amount of actual property damages proximately caused by the negligence of Mr. Clayton and HPB, then it would be your duty to write that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to write a nominal sum such as "One Dollar" in the blank space provided.

## DUTY TO DELIBERATE

Any verdict you reach in the jury room as to each issue for your consideration, must be unanimous as to each question and issue.  In other words, to return a verdict, you must all agree as to your verdict as to each question and issue.  Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way, you are judges — judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

## VERDICT FORM

Upon retiring to the jury room you should first elect one of your number to act as your foreperson who will preside over your deliberations and will be your spokesperson for you here in court.  A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill it in, date and sign it.  There is a buzzer in the jury room for you to use when you have reached a verdict.  Once you have reached verdict, we will then have you return to the courtroom.

If, during your deliberations, you should desire to communicate with the court, please reduce your message or question to writing signed by the foreperson, knock on the door, then pass the note to the marshal who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should never state or specify your numerical division at the time.

You should discuss the case only in the jury room and only when all seven of you are present.  If one person needs to be

-82-

excused, even briefly, suspend all discussion until you are all back together again.

If you would like to take a break and leave the jury room, please send a note to the marshal. I do want to keep track of where you are at any particular time. Upon receipt of your note, I will bring you into the courtroom and dismiss you for a break.

I am sending the exhibits which have been received into evidence with you as you retire for your deliberations. You are entitled to see and consider any or all of these exhibits as you deliberate upon your verdict. I will also send back with you a copy of these instructions.